Francis X. OSBORNE,

v.

James S. LEWIS, M.D., Barry Fabriziani, O.D., and Advanced Laser Vision, P.C.

Appeal of James S. Lewis, M.D. and Advanced Laser Vision, P.C.

Superior Court of Pennsylvania.

Argued March 28, 2012.
Filed Dec. 21, 2012.

Alan S. Gold, Jenkintown, for appellants.

Vincent M. DeAngelo, West Hartford, CT, and George F. Dale, Philadelphia, for appellee.

BEFORE: STEVENS, P.J., ALLEN and OLSON, JJ.

OPINION BY OLSON, J.:

In this medical malpractice action, Appellants, James S. Lewis, M.D. ("Dr. Lewis") and Advanced Laser Vision, P.C. ("Advanced Laser"), appeal from the trial court order entered July 6, 2011, denying their motion for summary judgment.[1] For the following reasons, we reverse the trial court's order and hold that the claims against Appellants are barred by the seven-year statute of repose set forth in the Medical Care Availability and Reduction of Error Act ("the MCARE Act"), 40 P.S. § 1303.513.

The record reflects the relevant factual and procedural history of this matter as follows.

On June 1, 2000, Dr. Lewis performed LASIK surgery on Appellee, Francis X. Osborne. On August 10, 2004, Mr. Osborne returned to see Dr. Lewis, complaining of decreased vision. At that time, Dr.

Lewis confirmed that Mr. Osborne was losing his vision. Mr. Osborne subsequently went to see a number of doctors and specialists. Eventually, Mr. Osborne was told that the LASIK surgery performed on June 1, 2000 was causing his sight to deteriorate.

On July 24, 2007, Mr. Osborne commenced this medical malpractice action against Dr. Lewis, Advanced Laser, and Barry Fabriziani, O.D. ("Dr. Fabriziani"), alleging that, on June 1, 2000, the defendants provided negligent medical care when they performed LASIK surgery on the corneas of both of Mr. Osborne's eyes. After the close of pleadings and discovery, all defendants moved for summary judgment. Appellants' motion alleged, *inter alia*, that the claims against them are barred by the seven-year statute of repose set forth in the MCARE Act, 40 P.S. § 1303.513(a). By its July 6, 2011 order, the trial court denied Appellants' motion for summary judgment.[2]

Subsequently, Appellants requested that the trial court amend the July 6, 2011 order and grant them permission to file an interlocutory appeal pursuant to 42 Pa. C.S.A. § 702(b) and Pennsylvania Rule of Appellate Procedure 1311. The trial court did not rule on the motion. Therefore, the motion was denied by operation of law. Pa.R.A.P. 1311(b) ("Unless the trial court or other government unit acts on the application within 30 days after it is filed, the trial court or other government unit shall no longer consider the application and it shall be deemed denied.")

Nevertheless, on August 3, 2011, Appellants filed a timely notice of appeal to the trial court's July 6, 2011 order. On Au-

---

1. The order denying summary judgment is dated July 5, 2011, but was docketed July 6, 2011. We refer to the July 6, 2011 date as the operable date of the order.

2. By the same order, the trial court granted Dr. Fabriziani's motion for summary judgment. The basis of that order is not at issue in this appeal.

gust 10, 2011, the trial court issued an order directing Appellants to file their concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants complied with that order on August 25, 2011, and on September 27, 2011, the trial court issued a Rule 1925(a) opinion.

The trial court's Rule 1925(a) opinion did not address the merits of Appellants' appeal, but instead opined that our Court lacked jurisdiction over the appeal because the order denying Appellants' motion for summary judgment was interlocutory. *See* Trial Court Opinion, 9/27/2011, at 3. Consequently, the trial court suggested that we quash the appeal.

On July 6, 2012, this panel issued a memorandum opinion, disagreeing with the trial court. Rather, we held that the July 6, 2011 trial court order denying Appellants' motion for summary judgment was an immediately appealable collateral order pursuant to Pennsylvania Rule of Appellate Procedure 313.[3] Consequently, we remanded this matter to the trial court with instructions for the trial court to prepare and file a supplemental Rule 1925(a) opinion addressing the merits of Appellants' issues on appeal. We retained jurisdiction and awaited the trial court's Rule 1925(a) opinion on the merits of Appellant's claims. On October 12, 2012, the trial court filed its supplemental opinion. Thus, the case is ripe for our decision on the merits of the issues raised by Appellants.

Appellants present three issues for our consideration:

> Whether an appeal lies pursuant to the collateral order doctrine from the trial court's denial of summary judgment, refusing to dismiss a medical malpractice claim pursuant to the MCARE [Act's] [seven]-year statute of repose ... ?
>
> Whether the MCARE [Act's] statute of repose, which applies to "causes of action which arise on or after the effective date" of March 20, 2002, applies to the claim of a LASIK surgery patient whose surgery, performed on June 1, 2000, results in injury consisting of visual deterioration beginning in late 2003 or early 2004?
>
> Whether the trial court erred in concluding that the MCARE [Act's] statute of repose, 40 P.S. § 1303.513, fails to bar suit that was filed more than seven years after the alleged tort, LASIK surgery, occurred?

Appellants' Brief at 4.

Appellants' first issue on appeal addresses whether we have jurisdiction to consider the trial court's July 6, 2011 order. As set forth above, on July 6, 2012, this panel issued a memorandum opinion

---

**3.** In determining that the denial of Appellants' motion for summary judgment was a collateral order, this panel concluded that 1) consideration of the MCARE Act's statute of repose was factually and legally distinct from the medical malpractice issues underlying this case; 2) the interests protected by the MCARE Act, including ensuring that medical care is available in the Commonwealth through a comprehensive and high-quality health care system, were too important to be denied appellate review; and, 3) a statute of repose is intended to impose immunity from suit, not just immunity from liability; therefore, the substantial cost that Appellants would incur in defending this complex malpractice case at a trial on the merits would be irreparably lost if review were postponed until final judgment. *See Brawley Distributing Co., Inc. v. Heartland Properties,* 712 A.2d 331, 332 (Pa.Super.1998) (An order is a collateral order immediately appealable as of right under Pa.R.A.P. 313 if "(1) the matter is separable from and collateral to the main cause of action; (2) it involves a right too important to be denied review; and (3) is such that the claimed right would be irreparably lost if review is postponed until final judgment in the case.")

**1112**

addressing the appealability of the trial court's July 6, 2011 order, wherein we held that the order is an immediately appealable collateral order. Therefore, we held that we have jurisdiction to address the merits of Appellants' appeal. Consequently, there is no need for us to address Appellants' first issue on appeal any further.

Appellants' next two issues on appeal address whether the MCARE Act's statute of repose applies to the malpractice claims asserted in this matter, and if so, whether the claims in this matter are barred by the application of that provision. Appellants' Brief at 10–16. Therefore, we consider the two issues together.

Our consideration of the applicability of the MCARE Act's statute of repose raises an issue of statutory interpretation. Issues of statutory interpretation present questions of law for which our standard of review is *de novo* and our scope of review is *plenary*. *Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc., L.P.,* 577 Pa. 14, 842 A.2d 334, 343 (2004).

In 2002, the Pennsylvania General Assembly reformed the law on medical professional liability by passing the MCARE Act. *See* Act of March 20, 2002, P.L. 154, *as amended,* 40 P.S. §§ 1303.101–1303.910. The declared intentions of the MCARE

Act establish that it was a comprehensive effort by the General Assembly to allow for fair compensation to those injured because of medical negligence, while attempting to maintain medical professional liability insurance at an affordable and reasonable cost. *See* 40 P.S. § 1303.102.[4] As Chief Justice Castille explained in his dissenting opinion in *Wexler v. Hecht,* 593 Pa. 118, 928 A.2d 973, 986 (2007), "[t]he MCARE Act was a response to a widely publicized perceived health care crisis in Pennsylvania, which included an alleged fear on the part of medical practitioners that malpractice insurance was becoming unaffordable resulting in some medical doctors opting to leave practice in the Commonwealth."

One way in which the MCARE Act addressed the crisis of the rising cost of medical professional liability insurance was to institute a seven-year statute of repose on claims that, prior to the act, had no statute of repose at all. *See* 40 Pa.S.A. § 1303.513. The MCARE Act's statute of repose reads as follows:

(a) **General rule.**—Except as provided in subsection (b) or (c), no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of contract.

---

**4.** Specifically, Section 1303.102 of the MCARE Act, entitled "Declaration of policy" states as follows:

The General Assembly finds and declares as follows:

(1) It is the purpose of this act to ensure that medical care is available in this Commonwealth through a comprehensive and high-quality health care system.
(2) Access to a full spectrum of hospital services and to highly trained physicians in all specialties must be available across this Commonwealth.
(3) To maintain this system, medical professional liability insurance has to be obtainable at an affordable and reasonable

cost in every geographic region of this Commonwealth.
(4) A person who has sustained injury or death as a result of medical negligence by a health care provider must be afforded a prompt determination and fair compensation.
(5) Every effort must be made to reduce and eliminate medical errors by identifying problems and implementing solutions that promote patient safety.
(6) Recognition and furtherance of all of these elements is essential to the public health, safety and welfare of all the citizens of Pennsylvania.

**(b) Injuries caused by foreign object.**—If the injury is or was caused by a foreign object unintentionally left in the individual's body, the limitation in subsection (a) shall not apply.

**(c) Injuries of minors.**—No cause of action asserting a medical professional liability claim may be commenced by or on behalf of a minor after seven years from the date of the alleged tort or breach of contract or after the minor attains the age of 20 years, whichever is later.

**(d) Death or survival actions.**—If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.

**(e) Applicability.**—No cause of action barred prior to the effective date of this section shall be revived by reason of the enactment of this section.

**(f) Definition.**—For purposes of this section, a "minor" is an individual who has not yet attained the age of 18 years.

*Id.* Significantly, the implementing provision of the MCARE Act specifically sets forth that the statute of repose applies to causes of action that "arise on or after" its effective date, March 20, 2002. Act 2002–13, P.L. 154, § 5105(b).

In its Rule 1925(a) opinion denying application of the MCARE Act's statute of repose to this matter, the trial court reasoned that the alleged tort suffered by Mr. Osborne occurred on June 1, 2000, when Mr. Osborne underwent LASIK surgery. Trial Court Opinion, 10/12/2012, at 9. None of the parties in this matter disputes that fact; the alleged tort occurred on June 1, 2000. Considering that the alleged tort occurred on June 1, 2000, which was nearly two-years prior to the effective date of the MCARE Act (March 20, 2002), the trial court reasoned that the MCARE Act's statute of repose does not apply to this matter. *Id.* Consequently, the trial court denied Appellant's motion for summary judgment on that basis.

Appellants, however, distinguish the language used in the MCARE Act's statute of repose, from the language in the clause providing when the MCARE Act is effective. Appellants point out that, while the MCARE Act's statute of repose runs from the **date of the alleged tort,** the Act may be applied to **causes of action that "arise on or after" the March 20, 2002** date. Appellants' Brief at 12–16 (emphasis added). According to Appellants, under certain circumstances, there is a distinction between when a "tort occurs" and when a "cause of action arises." *Id.* at 13. In those circumstances, Appellants argue, the MCARE Act's statute of repose bars causes of action alleging injuries that arise after the effective date of the Act even if the medical procedure/advice that produces the injury occurred prior to the MCARE Act's effective date. *Id.*

In support of their argument, Appellants rely upon our Court's reasoning in *Matharu v. Muir,* 29 A.3d 375 (Pa.Super.2011) *(en banc).* Appellant's Brief at 13–14. In *Matharu,* plaintiffs, a husband and wife with conflicting Rh-negative and Rh-positive blood types, filed suit in 2007 shortly after the death of their sixth child. *Id.* at 377–380. In that matter, the parties agreed that the negligent act which formed the basis of the action occurred in 1998, when the defendant doctor failed to administer RhoGAM during or immediately after the mother's second pregnancy.[5] *Id.* at

---

5. RhoGAM is a drug that prevents the harmful effects of conflicting Rh blood types in future pregnancies.

380. The plaintiffs alleged that the doctor's failure to administer RhoGAM in 1998 caused the death of their sixth child in 2005. *Id.* Defendants in *Matharu* moved for summary judgment, arguing, *inter alia,* that the couple's claims were barred by the applicable statute of limitations. *Id.* The trial court denied that motion, and defendants appealed.

Of significance to this matter, on appeal in *Matharu,* an *en banc* panel of our Court held that the MCARE Act's statute of repose applied to the couple's claims because, while the tort at issue occurred in 1998, the injury giving rise to a cause of action did not occur until 2005, when their sixth child died. *Id.* at 382. Therefore, because the couple's cause of action arose after the implementation of the MCARE Act (March 20, 2002), we held that the specific "death or survival actions" provision of the MCARE Act's statute of repose applied to that matter. *Id.*; 40 Pa.S.A. § 1303.513(d).

██ Pursuant to our reasoning in *Matharu,* we agree with Appellants that claims resulting from a tort that occurred prior to the effective date of the MCARE Act may be subject to the Act's statute of repose, if, like in *Matharu,* the cause of action resulting from that tort did not arise until after the effective date of the MCARE Act.[6] Therefore, we next consider whether Mr. Osborne's cause of action arose before or after the effective date of the MCARE Act; *i.e.,* March 20, 2002.

██ Mr. Osborne argues that his cause of action arose in June of 2000, when he had the LASIK surgery. Osborne's Brief at 16–20. In support of that argument, Mr. Osborne relies upon medical testimony from several doctors, each opining that

Mr. Osborne was a poor candidate for LASIK surgery, and that performing such surgery on his eyes deviated from the standard of care. *Id.* According to the testimony relied upon by Mr. Osborne, the LASIK surgery in 2000 caused the progression of Mr. Osborne's declining sight. *Id.* Therefore, Mr. Osborne argues that he was injured in June of 2000, such that his cause of action arose at the time of his surgery. *Id.*

Appellants, however, argue that under Pennsylvania law, a cause of action does not arise until the injury resulting from the tort physically manifests itself and becomes objectively ascertainable. Appellant's Brief at 13. Under that theory, Appellants argue that, even accepting the medical testimony opining that performing surgery on Mr. Osborne in June of 2000 was contrary to the standard of care, Mr. Osborne's cause of action did not arise until he suffered a noticeable effect from the deviation from that standard of care. *Id.* Based upon the certified record, Appellants argue that Mr. Osborne's own testimony concedes that he did not suffer deterioration in his eyesight until late 2003 or 2004. *Id.* Therefore, Appellants argue that there is no material issue of fact that Mr. Osborne's cause of action did not arise until late 2003 or 2004—after the effective date of the MCARE Act. *Id.*

██ Pursuant to Pennsylvania law, a cause of action accrues when a plaintiff could first maintain the action to successful conclusion. *Kapil v. Assoc. of Pa. State College and Univ. Faculties,* 504 Pa. 92, 470 A.2d 482, 485 (1983). To maintain his medical malpractice action to successful conclusion, Mr. Osborne is required to establish "that 1) the medical practitioner

---

**6.** We note that neither the trial court nor Mr. Osborne provide counter-analysis distinguish-

ing this matter from *Matharu.*

owed a duty to [him]; 2) the practitioner breached that duty; 3) the breach was the proximate cause of, or a substantial factor in, bringing about the harm [that he suffered]; and 4) the damages suffered were the direct result of the harm." *Carrozza v. Greenbaum*, 866 A.2d 369, 379 (Pa.Super.2004), *citing Montgomery v. South Philadelphia Medical Group*, 441 Pa.Super. 146, 656 A.2d 1385, 1390 (1995). Furthermore, distinguishing between "injury" and "harm," our Court has held that even if a plaintiff has been **injured,** that plaintiff may not pursue a claim for damages until he or she exhibited some physical manifestation of **harm** resulting from the injury. *See Ingenito v. AC & S, Inc.*, 430 Pa.Super. 129, 633 A.2d 1172, 1178 (1993).

For example, in *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996), the Pennsylvania Supreme Court denied recovery for claims based upon exposure to asbestos where, although the plaintiffs each suffered diagnosed asbestos-related diseases, the diseases were, as of the time of suit, asymptomatic. Appellants in that matter argued that, "even though they [had] not proven the existence of physical symptoms, they [had] medically significant diseases that will never improve, and may worsen." *Id.* at 236. Therefore, the appellants in *Simmons* argued that their injuries (the diseases) warranted the awarding of damages. *Id.* The Supreme Court disagreed, reasoning, in part, that, despite the existence of the diseases, because appellants in that matter suffered no harm from the diseases, they had not established physical injury necessitating an award of damages. *Id.* at 237.

Similarly, in *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959), the plaintiff sued the doctor who, nine years earlier, had performed surgery on him and had left a sponge within the plaintiff's abdomen. Within its consideration of the applicable statute of limitations, the Supreme Court in *Ayers* explained that, while the act of leaving the sponge within his abdomen was certainly actionable, the plaintiff in *Ayers* could not have launched his lawsuit on the day that the surgery was performed because, at that time, no injury was yet inflicted. *Id.* at 790. Rather, the Supreme Court explained that "[t]he injury became a reality when the sponge began to break down healthful tissue within the body of the plaintiff." *Id.* Quoting its holding in a previous matter, the Court explained, "a right of action accrues only when injury is sustained by the plaintiff[ ]—*not when the causes are set in motion which ultimately produce the injury as a consequence.*" *Id.* at 790–791, *quoting Foley v. Pittsburgh–Des Moines Co.*, 363 Pa. 1, 68 A.2d 517, 535 (1949) (emphasis in original).[7]

Applying the above reasoning to this matter, we hold that, while the LASIK surgery which allegedly set in motion the ultimate decline of Mr. Osborne's vision occurred on June 1, 2000, Mr. Osborne's cause of action did not arise until he suffered ascertainable negative effects of the LASIK surgery. On that issue, it is significant to note that none of the medical testimony relied upon by Mr. Osborne in opposition to summary judgment opines when Mr. Osborne first suffered and/or noticed the effects of his declining sight. *Id.* Rather, the only evidence presented on the issue is the testimony of Mr. Osborne and his mother, explaining that he first noticed his declining vision in late 2003 or 2004. Mr. Osborne offers no evidence to dispute that timeframe. Consequently,

---

7. Though not relevant to this matter, we note that the MCARE Act's statute of repose includes a specific provision addressing injuries caused by foreign objects unintentionally left in an individual's body. *See* 40 Pa.S.A. § 1303.513(b).

there is no disputed issue of material fact that Mr. Osborne was unable to maintain his action to successful conclusion until late 2003 or 2004. Therefore, Mr. Osborne's cause of action arose, at the earliest, in late 2003. Consequently, we hold that the MCARE Act's statute of repose, which applies to causes of action that arise on or after March 20, 2002, applies to this action.

As set forth above, the applicable subsection of the MCARE Act's statute of repose relevant to this matter mandates that "no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of contract." 40 Pa.S.A. § 1303.513(a). In this matter, neither party disputes that the alleged tort occurred on June 1, 2000, and that Mr. Osborne filed suit over seven years later, on July 24, 2007. Consequently, application of the MCARE Act's statute of repose to this matter compels the conclusion that Mr. Osborne's claims against Appellants are barred by passage of the repose period.

■ Our analysis, however, does not end here. Rather, in its Rule 1925(a) opinion, the trial court goes on to suggest that, even if the MCARE Act's statute of repose applies to this matter (which we hold that it does), application of the statute of repose should be tolled by the doctrine of fraudulent concealment. Trial Court Opinion, 10/12/2012, at 9–10. Referring to a concept occasionally raised by plaintiffs in opposition to a statute of limitations defense, the trial court noted that the doctrine of fraudulent concealment tolls the running of statutes of limitations where fraud has caused a plaintiff to relax his vigilance or deviate from his right to inquire into the facts. *Id., quoting Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 861 (2005). With this principle in mind, the trial court in this case determined that there was at least a material issue of fact that Appellants fraudulently concealed the cause of Mr. Osborne's deteriorating vision. *Id.* Therefore, the trial court concluded that the running of the MCARE Act's statute of repose should be tolled by the doctrine of fraudulent concealment. *Id.*

■ The trial court's analysis and reliance upon *Fine*, however, improperly blends the concepts of statutes of limitations and statutes of repose. Statutes of repose and statutes of limitations set forth different time limitations, with different intentions, and different applicable doctrines. *See e.g. Noll v. Harrisburg Area YMCA*, 537 Pa. 274, 643 A.2d 81, 84 (1994) (A statute of repose "does not merely bar a party's right to a remedy as a statute of limitations does, but it completely abolishes and eliminates the cause of action."); *McConnaughey v. Building Components, Inc.*, 536 Pa. 95, 637 A.2d 1331, 1332 n. 1 (1994) ("Statutes of repose differ from statutes of limitation in that statutes of repose potentially bar a plaintiff's suit before the cause of action arises, whereas statutes of limitation limit the time in which a plaintiff may bring suit after the cause of action accrues."). The trial court's reliance upon precedent addressing statutes of limitations does not persuade us that the doctrine of fraudulent concealment applies to the MCARE Act's statute of repose.

Indeed, we are unaware of any Pennsylvania precedent applying the doctrine of fraudulent concealment to the statute of repose set forth at Section 1303.513(a). Therefore, we consider the language of Section 1303.513 to determine whether the General Assembly intended for fraudulent concealment to apply. In interpreting the MCARE Act, we are mindful of the principles that guide us.

Specifically, in determining legislative intent, sections of a statute must be read

together and construed with reference to the entire statute. 1 Pa.C.S. § 1921(a). When the words of a statute are free and clear of all ambiguity, we cannot disregard the letter of the statute under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Also, where the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded. *Fonner v. Shandon, Inc.* [555 Pa. 370], 724 A.2d 903, 907 (Pa.1999); *Cali v. City of Philadelphia* [406 Pa. 290], 177 A.2d 824, 832 (Pa.1962). Finally, where a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent. *Fonner*, 724 A.2d at 907; *Commonwealth v. Bigelow*, [484 Pa. 476], 399 A.2d 392, 395 (Pa.1979).

*Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 603 Pa. 452, 985 A.2d 678, 694 (2009) (parallel citations omitted).

Analysis of Section 1303.513 reveals that the MCARE Act's statute of repose expressly provides for the doctrine of fraudulent concealment to apply in wrongful death or survival actions.[8] By contrast, the general statute of repose set forth in subsection (a), and at issue in this matter, does not expressly provide an exception for fraudulent concealment.[9] Applying the principles set forth above, by expressly providing a fraudulent concealment exception in subsection (d) of the statute of repose, while providing no similar exception in subsection (a) of the statute of repose, the General Assembly expressed its intention that a fraudulent concealment exception should not apply to claims addressed by subsection (a).[10] *See Fletcher*, 985 A.2d at 694.

Therefore, we hold that, contrary to the trial court's analysis, the doctrine of fraudulent concealment does not apply to the MCARE Act's general statute of repose set forth in section 1030.513(a). Consequently, because the seven-year statute of repose set forth at subsection 1303.513(a) applies to this matter, and because Mr. Osborne did not institute suit until more than seven years after his LASIK surgery, we conclude, as a matter of law, that Mr. Osborne's claims against Appellants are barred by the MCARE Act's statute of repose. The trial court's denial of Appel-

---

8. *See* 40 Pa.S.A. § 1303.513(d) ("If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death **in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.**" (emphasis added)).

9. *See* 40 Pa.S.A. § 1303.513(a) ("Except as provided in subsection (b) or (c), no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of contract.").

10. We note that Mr. Osborne's reliance upon *Goll v. Ins. Co. of North America*, 417 Pa.Super. 46, 611 A.2d 1255 (1992), *appeal granted, judgment vacated*, 536 Pa. 82, 637 A.2d 1325 (1994), *appeal denied*, 539 Pa. 668, 652 A.2d 838 (1994) is misplaced, as that case was vacated and remanded for reconsideration. Furthermore, even if that precedent were still good law, our Court's holding in that matter is distinguishable from this action. Specifically, in *Goll* we held, *inter alia*, that a statute of repose with respect to an insurer's obligations may be tolled by the doctrine of fraudulent concealment. That holding, however, had nothing to do with the MCARE Act, and does not overcome the clear legislative intent set forth in the language of the MCARE Act. Simply stated, inclusion of a fraudulent concealment exception in one section of the MCARE Act's statute of repose, and omission of the same exception in a different section of the statute of repose, persuasively instructs that the General Assembly did not intend for the exception to apply to the section from which it was omitted.

lants' motion for summary judgment was an error of law that we now reverse.

Order reversed.