**[J-10A-2017 and J-10B-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| ROBERT DUBOSE, ADMINISTRATOR OF THE ESTATE OF ELISE DUBOSE, DECEASED | : No. 21 EAP 2016<br>:<br>: Appeal from the judgment of Superior<br>: Court entered 10/23/2015 at No. 2752<br>: EDA 2013 (reargument denied<br>: 12/23/2015) affirming the judgment<br>: entered August 21, 2013, in the Court of<br>: Common Pleas, Philadelphia County,<br>: Civil Division,  at No. 0846, September<br>: Term 2009. |
| v. | |
| MARK  QUINLAN, DONNA BROWN, RNC, BSN, ALBERT EINSTEIN MEDICAL CENTER D/B/A WILLOWCREST, WILLOWCREST AND JEFFERSON HEALTH SYSTEM | : ARGUED:  March 7, 2017<br>:<br>:<br>: |
| APPEAL OF: WILLOWCREST NURSING HOME, ALBERT EINSTEIN HEALTHCARE NETWORK, ALBERT EINSTEIN MEDICAL CENTER D/B/A WILLOWCREST AND WILLOWCREST | :<br>:<br>:<br>:<br>: |
| ROBERT DUBOSE, ADMINISTRATOR OF THE ESTATE OF ELISE DUBOSE, DECEASED, | : No. 22 EAP 2016<br>:<br>: Appeal from the judgment of the<br>: Superior Court entered 10/23/2015 at<br>: No. 2753 EDA 2013 (reargument denied<br>: 12/23/2015) affirming the judgment<br>: entered August 21, 2013, in the Court of<br>: Common Pleas, Philadelphia County,<br>: Civil Division,  at No. 1603 August<br>: Term, 2009. |
| Appellee | |
| v. | |
| WILLOWCREST NURSING HOME, AND ALBERT EINSTEIN HEALTHCARE NETWORK, | : ARGUED:  March 7, 2017<br>:<br>: |
| Appellants | : |

**OPINION**

**JUSTICE MUNDY**                                    **DECIDED:  November 22, 2017**

In this appeal by allowance, we consider whether the Superior Court applied the correct statute of limitations for a survival action in a medical professional liability case. For the reasons set forth below, we conclude the statute of limitations for medical professional liability cases in the form of wrongful death or survival actions is two years from the time of the decedent's death.  Accordingly, we affirm the judgment of the Superior Court.

The facts and procedural history of this medical professional liability action, asserting negligent care at a nursing home, are as follows.  On July 25, 2005, Elise Dubose was admitted to Albert Einstein Medical Center (Einstein) after she fell in her home and sustained severe head injuries, including anoxia and a brain injury.  On August 9, 2005, Mrs. Dubose was transferred and admitted to Willowcrest Nursing Home (Willowcrest), a division of Einstein, where she was diagnosed with Type II diabetes, respiratory failure necessitating a ventilator, chronic obstructive pulmonary disease, and several pressure ulcers (bedsores).  On September 6, 2005, to treat the ulcers, a physician ordered a flexor bed and frequent repositioning of Mrs. Dubose. Willowcrest's staff negligently failed to follow the physician's order, resulting in a deterioration of Mrs. Dubose's existing pressure ulcers and proliferation of new ones to other parts of her body.  During a hospitalization at Einstein from January 30 to February 14, 2007, Mrs. Dubose developed additional bedsores on her right heel and shin, on her right scapula (upper back), and on her lower back.  In addition, while at Willowcrest from 2005 to 2007, Mrs. Dubose suffered malnourishment, dehydration, conscious pain from the bedsores, bone infection, and a sepsis systemic infection.

One of the ulcers, located at the sacral region of the spine, which Mrs. Dubose developed during her initial July 25, 2005 hospitalization, gradually increased in size

from August 9, 2005 to July 2007.  In July 2007, the sacral ulcer became infected with bacteria from contact with feces.  This infection caused sepsis in Mrs. Dubose in September 2007, and she was admitted to Einstein with sepsis on September 12, 2007. On October 18, 2007, Mrs. Dubose died from sepsis and multiple pressure sores.

On August 13, 2009, Robert Dubose, as administrator for the Estate of Elise Dubose, filed a complaint against Willowcrest and Albert Einstein Healthcare Network (collectively Appellants).  This complaint contained counts for negligence on behalf of Mrs. Dubose (survival action[1]), and a wrongful death action[2] to compensate Mrs. Dubose's survivors.  Additionally, on September 14, 2009, Robert Dubose commenced a second case by filing a praecipe to issue a writ of summons.  On October 7, 2009, Mr. Dubose filed a complaint in the second case, asserting similar survival and wrongful death actions based on negligence, requesting punitive damages, and naming as defendants Mark Quinlan, Willowcrest's administrator; Donna Brown, Willowcrest's director of nursing; Einstein; Willowcrest; and Jefferson Health System.  On October 18, 2010, the trial court issued an order consolidating the two cases pursuant to Pennsylvania Rule of Civil Procedure 213(a).

In October 2012, the case proceeded to a jury trial, which resulted in a mistrial. A second jury trial was held from February 13, 2013 to March 13, 2013.  On March 13, 2013, the jury returned a verdict in favor of Mr. Dubose and against Appellants in the amount of $125,000.00 on the wrongful death action and $1,000,000.00 on the survival action.  The jury apportioned liability as 60% to Willowcrest, 25% to Einstein Healthcare Network, and 15% to Donna Brown.  Further, on March 21, 2013, following a bifurcated punitive damages trial, the same jury awarded $875,000.00 in punitive damages against

---

[1] Act of June 30, 1972, P.L. 500, No. 164.

[2] Act of 1855, P.L. 309; Pa.R.C.P. 2202(a).

Appellants. The trial court granted the defendants' post-trial motions in part in the form of judgment notwithstanding the verdict (JNOV), dismissing the action as against Donna Brown because she was an employee of Willowcrest, but the trial court did not reduce the amount of the verdict. The trial court denied the remaining post-trial motions for a new trial, for JNOV, and for remittitur, and entered judgment on the verdict. Regarding the subject of this appeal, the trial court explained that Mr. Dubose's survival action was timely filed pursuant to Section 513(d) of the Medical Care Availability and Reduction of Error Act (MCARE), 40 P.S. §§ 1303.501-1303.516, which permits plaintiffs to bring survival actions within two years of death. Trial Ct. Op., 6/27/14, at 11. As alternative support, the trial court applied the "discovery rule" and concluded that Mrs. Dubose's comatose condition prevented her from knowing or reasonably discovering her injuries before her death. *Id.* at 12. Appellants appealed to the Superior Court.

Relevant to this appeal, Appellants argued Mr. Dubose's survival claims were barred by the two-year statute of limitations for personal injury actions, which began to run at the time of Mrs. Dubose's injury in 2005.[3] Appellants asserted that a survival action is distinct from a wrongful death action. A survival action is merely a continuation

---

[3] 42 Pa.C.S. § 5524 provides a two-year statute of limitations for personal injury actions:

**§ 5524. Two year limitation**

The following actions and proceedings must be commenced within two years:

. . .

(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

42 Pa.C.S. § 5524(2).

of a cause of action that accrued to the plaintiff's decedent while the decedent was alive, and the statute of limitations begins to run when the decedent is injured. On the other hand, a wrongful death action accrues to the decedent's heirs when the decedent dies of such an injury, and its statute of limitations begins to run at the decedent's death. Appellants asserted that once the statute of limitations expires on the decedent's cause of action, it cannot form the basis for a survival action following the decedent's death. Appellants' Super. Ct. Brief at 12-14 (citing *Baumgart v. Kenne Bldg. Prods. Corp.*, 633 A.2d 1189 (Pa. Super. 1993) (en banc)).

Applying these principles, Appellants argued that the statute of limitations for Mrs. Dubose's medical professional liability claim began when she sustained the pressure ulcer in 2005. The two-year statute of limitations on the survival actions expired in 2007, and therefore the survival actions Mr. Dubose filed in 2009 were time-barred.

Further, Appellants disputed the trial court's holding that the survival action was rendered timely by Section 513 of MCARE, which provides:

### § 1303.513. Statute of repose

**(a) General rule.--**Except as provided in subsection (b) or (c), no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of contract.

**(b) Injuries caused by foreign object.--**If the injury is or was caused by a foreign object unintentionally left in the individual's body, the limitation in subsection (a) shall not apply.

**(c) Injuries of minors.--**No cause of action asserting a medical professional liability claim may be commenced by or on behalf of a minor after seven years from the date of the alleged tort or breach of contract or after the minor attains the age of 20 years, whichever is later.

**(d) Death or survival actions.**--If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.

. . .

40 P.S. § 1303.513(a)-(d).

Appellants contended the trial court misapprehended MCARE to revive causes of action that the statute of limitations barred. The trial court relied on *Matharu v. Muir*, 86 A.3d 250, 263 (Pa. Super. 2014) (en banc), in which then-Judge, now-Justice, Donohue authored a unanimous, en banc opinion holding "subsection 1303.513(d) does not set forth a statute of repose at all, but rather is a statute of limitation[,] . . . and survival claims under 42 Pa.C.S. § 8302 must be commenced within two years after the death, unless there is fraudulent misrepresentation or concealment as to the cause of death." *Matharu*, 86 A.3d at 263. Appellants attempted to distinguish *Matharu* because that case involved a timely survival action, and this case is based on an untimely survival action. According to Appellants, the statute of limitations on Mrs. Dubose's medical professional liability action expired before her death, so a survival claim was already barred before her death. MCARE does not permit an already-barred claim to become timely through the survival statute.

In the alternative, Appellants argued that even if the statute of limitations ran from the date of Mrs. Dubose's October 17, 2007 death, certain claims added in amended complaints after October 17, 2009 were time-barred. Appellants narrowly construed the Estate's survival action as solely based on Appellants' negligent wound care, resulting in a pressure ulcer. Appellants contended that after the statute of limitations expired, the trial court permitted the Estate to amend its complaints to add new facts to support

additional malpractice claims. According to Appellants, these newly added facts "alleged conduct of dietitians, nutritionists, physical therapists, occupational therapists, rehabilitation therapists, recreational therapists and social workers, relating to nutrition and hydration, diabetes, urinary tract infections, urinary incontinence, acute renal failure and anemia . . . ." Appellants' Super. Ct. Br. at 21-22. Appellants alleged these later-added claims prejudiced them because they resulted in a verdict of $1,000,000 for pain and suffering.

In his Superior Court brief, Mr. Dubose emphasized that Mrs. Dubose was under constant care at Appellants' facilities from August 2005 through October 2007, during which time she developed ten pressure ulcers and other conditions, such as dehydration. The cause of Mrs. Dubose's death was sepsis combined with the ten pressure wounds. Thus, Mr. Dubose contended that there were new, additional injuries to Mrs. Dubose continuously until the date of her death.[4]

Mr. Dubose maintained Section 513(d) of MCARE permitted him to bring the survival action within two years of Mrs. Dubose's death. In support, he stated that the *Matharu* Court held that the specific language of Section 513(d) controlled over the general statute of limitations in 42 Pa.C.S. § 5524(2).

Lastly, Mr. Dubose argued no new causes of action were added after the statute of limitations expired. Specifically, the language in paragraph 11 of the original

---

[4] In the alternative, Mr. Dubose then asserted that the "discovery rule" tolled the statute of limitations. Under the "discovery rule," a cause of action does not accrue until the plaintiff discovers, or should have discovered, the injury. Mr. Dubose invoked the discovery rule because Mrs. Dubose did not have the mental or physical capabilities to exercise reasonable diligence and determine the facts of her injuries or whether she had a claim for medical negligence. Mr. Dubose refuted Appellants' argument that Mr. Dubose had Mrs. Dubose's power of attorney, so his knowledge of the injuries was more relevant than her knowledge. Mr. Dubose pointed out that Appellants' waived the issue by failing to introduce the complete power of attorney document at trial.

complaint avers while a resident at Willowcrest, Mrs. Dubose sustained serious injuries *included but not limited to* pressure ulcers, which contributed to her death. Upon consideration of Appellants' preliminary objections, the trial court ordered Mr. Dubose to file a more specific complaint. Mr. Dubose contended that he should not be penalized for complying with that court order.

A panel of the Superior Court unanimously affirmed the trial court's order. It held Mr. Dubose's survival action was timely under Section 513(d) of MCARE because Mr. Dubose commenced the action within two years of Mrs. Dubose's death. The Superior Court reasoning was contained in the following paragraph:

> First, appellants claim that the survival action was filed beyond the statute of limitations. According to appellants, the statute began to run in 2005, when Mrs. Dubose developed a pressure wound. (Appellants' brief at 14.) Appellants are mistaken. The MCARE Act[] clearly provides that wrongful death and survival actions may be brought within two years of death.[2] Mrs. Dubose died on October 18, 2007, and the plaintiff filed two complaints, one in August 2009, and one in September 2009, which were ultimately consolidated. Both were filed within two years of the decedent's death. Therefore, the Survival Act claim was timely filed within the two-year statute of limitations.
>
> _____
>
> [2] **§ 1303.513. Statute of repose**
>
> > **(d) Death or survival actions.--**If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.
>
> 40 [P.S.] § 1303.513(d).

*Dubose v. Quinlan*, 125 A.3d 1231, 1238 (Pa. Super. 2015) (footnote omitted).

The Superior Court then addressed Appellants' issue that Mr. Dubose added causes of action in his amended complaints after the statute of limitations expired. *Id.* The court found Appellants waived this issue in the following analysis:

> Appellants also complain that the plaintiff was allowed to add new causes of action in his amended complaints, outside the statute of limitations. (Appellants' brief at 21.) This claim was not raised in appellants' Rule 1925(b) statement, nor was it addressed by the trial court. Therefore, it is waived. Pa.R.A.P. 1925(b)(4)(vii); *Lazarski v. Archdiocese of Philadelphia*, 926 A.2d 459, 463–464 (Pa. Super. 2007), *appeal denied*, 594 Pa. 714, 937 A.2d 446 (2007) (citations omitted).

*Id.* The Superior Court affirmed the judgment entered in the court of common pleas.

Appellants subsequently filed in this Court a petition for allowance of appeal, which the Court granted to consider the following question.

> Do special and important reasons exist which mandate this Court's intervention, since the Superior Court improperly lengthened, potentially significantly, the statute of limitations applicable to survival actions in medical professional liability claims contrary to 42 Pa.C.S. §§ 5542(2) and 5502(A), all legal authority emanating from this Court, and the intent of the legislature when enacting the MCARE Act's statute of repose?

*Dubose v. Quinlan*, 138 A.3d 610, 610 (Pa. 2016) (per curiam).

Based on this Court's focus on this issue, the parties have presented the following arguments. Appellants argue that the Superior Court's interpretation of Section 513(d) as a statute of limitations conflicts with precedent from this Court requiring survival actions to be commenced within two years of the date of the decedent's injury. Appellants' Brief at 23. The Superior Court's interpretation results in two different statutes of limitations for survival actions: two years from the date of death for medical professional liability claims and two years from the date of injury for all other survival actions. *Id.* Instead, Appellants contend that Section 513(d), consistent with its

title, is a statute of repose that establishes the maximum allowable time period—two years from the date of death—for filing survival actions. *Id.* at 24.

As a statute of repose, Appellants contend Section 513(d) does not affect the two-year statute of limitations in 42 Pa.C.S. § 5524(2) for personal injury claims, which begins to run when the decedent knew, or should have known, of the decedent's injury and its cause. *Id.* Appellants argue that the cause of action accrues and the statute of limitations begins to run if the decedent knew or should have known of the injury and its cause, even if the injury occurs before the decedent's death. *Id.*

In support of their interpretation of Section 513(d) as a statute of repose, Appellants explain that this Court has recognized that survival actions are not new, independent causes of action; instead, they permit the decedent's personal representative to pursue a cause of action that accrued to the decedent before death. *Id.* at 25 (citing *Pastierik v. Duquesne Light Co.*, 526 A.2d 323, 326 (Pa. 1987); *Anthony v. Koppers Co.*, 436 A.2d 181, 185 (Pa. 1981); *Pezzulli v. D'Ambrosia*, 26 A.2d 659, 661 (Pa. 1942)). Because the cause of action will accrue when the decedent knew or should have known of an injury, and a survival action is simply a continuation of such a cause of action, the statute of limitations for a survival action begins to run at the time of the underlying tort and does not "reset" upon the decedent's death. *Id.* (citing *Pastierik*, 526 A.2d at 326-27; *Anthony*, 436 A.2d at 183-84). Appellants assert that once the statute of limitations expires on the underlying tort, a survival action is likewise time-barred. *Id.* at 26-27 (citing *Baumgart v. Keene Bldg. Prods. Corp.*, 633 A.2d 1189 (Pa. Super. 1993) (en banc)). This is consistent with reading Section 513(d) as a statute of repose that sets the latest date that a survival action can be commenced. *Id.* at 36.

Applying these principles to this case, Appellants maintain that Mrs. Dubose's medical negligence cause of action accrued when her sacral ulcer developed in 2005,

and Mrs. Dubose and Mr. Dubose were aware of the injury and attributed it to negligent care. *Id.* at 27. Further, because Mr. Dubose held Mrs. Dubose's power of attorney with the right to bring a lawsuit on her behalf, Appellants argue that his knowledge of Mrs. Dubose's injury should be imputed to Mrs. Dubose. *Id.* at 38-51. As this is an action for personal injury, it was subject to a two-year statute of limitations, which Appellants assert expired in 2007. *Id.* at 28. Because Mr. Dubose did not commence the survival action until 2009, Appellants conclude it was time-barred. *Id.*

Additionally, Appellants argue that the Superior Court erred in this case and in its previous decision of *Matharu* which also concluded that Section 513(d) is a statute of limitations that runs from the date of death. *Id.* at 29 (citing *Matharu*, 86 A.3d at 263). Appellants emphasize that this results in two different statutes of limitations for survival actions. *Id.* at 30. To illustrate, Appellants contemplate a decedent injured by a defective product in 2005, but who does not bring a lawsuit before her death in 2008. *Id.* In such a case, a survival action brought by the decedent's estate would be time-barred. *Id.* However, under the interpretation of Section 513(d) adopted by the Superior Court, if a decedent is injured by medical negligence in 2005, but does not file a lawsuit before her death in 2008, the decedent's estate has an additional two years to file a survival action from the date of her 2008 death. *Id.* at 31. Appellants argue that the General Assembly did not intend to create such a result. *Id.* at 31.

Further, the Superior Court's interpretation of Section 513(d) contravenes the legislative purpose of MCARE, which Appellants assert was to curb "the medical malpractice crisis gripping this Commonwealth."[5] *Id.* at 32. The Superior Court's

---

[5] The effective date of most MCARE provisions was March 20, 2002. Act 13 of 2002, P.L. 154, No. 13 § 5108. The Administrative Office of Pennsylvania Courts compiled statistics showing that the number of medical malpractice cases newly filed in Pennsylvania has decreased from an average of 2,733 in 2000-02 to 1,530 new cases filed in 2015, which is a 44.0% reduction. *See* Pennsylvania Medical Malpractice Case (continued…)

decision in this case results in the revival of a survival claim that accrued four years before decedent died, which Appellants argue is inconsistent with the General Assembly's intent in passing MCARE. *Id.* at 33-35. For these reasons, Appellants request that we reverse the decisions of the trial court and Superior Court and grant JNOV in favor of Appellants on the survival claim.[6]

In response to Appellants' arguments, Mr. Dubose initially contends that the discovery rule applies in this case because Appellants admitted that Mrs. Dubose was brain damaged while in their care. Mr. Dubose's Brief at 16. Due to her mental disability, Mrs. Dubose was unable to investigate the nature and cause of her injuries. *Id.* Because Mrs. Dubose lacked the awareness of her injury and its cause, a medical professional liability claim did not accrue to her. *Id.* at 17 (citing *Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266 (3d Cir. 2006); *Zeidler v. United States*, 601 F.2d 527 (10th Cir. 1979)). Mr. Dubose argues Appellants' reliance on Mrs. Dubose's power of attorney was waived because Appellants did not produce the entire power of attorney document until the case was on appeal to the Superior Court. *Id.* at 30. Therefore, the power of attorney was not part of the certified record, even though Appellants had possession of a power of attorney document since 2006. *Id.* at 31.[7]

---

(…continued)
Filings (Oct. 11, 2016), http://www.pacourts.us/assets/files/setting-2929/file-4474.pdf?cb=382360.

[6] In the alternative, Appellants argue they were entitled to partial JNOV because Mr. Dubose's amended complaints added new causes of action after the statute of limitations expired. We decline to address this claim because it is outside the scope of the grant of allowance of appeal, which was limited to whether "the Superior Court improperly lengthened, potentially significantly, the statute of limitations applicable to survival actions in medical professional liability claims . . . ." *Dubose*, 138 A.3d at 610.

[7] We do not address Mr. Dubose's alternative argument for affirmance based on the discovery rule because we conclude the survival action was timely filed under Section 513(d).

Additionally, Mr. Dubose contends that while the sacral wound appeared in 2005, the complaint alleged a course of negligence against Mrs. Dubose that resulted in multiple injuries from 2005 to 2007, including additional pressure wounds, sepsis, hypertension, and acute renal failure. *Id.* at 19-20. Accordingly, Mr. Dubose contends this case involves more negligence than Appellants' simplification of "one pressure sore that developed in 2005." *Id.* at 20. Instead, Mr. Dubose notes that Mrs. Dubose died from septic shock, caused by multiple pressure wounds, and dehydration. *Id.*

Further, Mr. Dubose contends the plain language of Section 513(d) states that medical professional liability claims in the form of wrongful death and survival actions may be brought within two years of decedent's death. *Id.* at 21. Mr. Dubose argues that because the text of Section 513 is not ambiguous, we merely need to give effect to that language and not consult any principles of statutory construction. *Id.* Mr. Dubose notes that the legislature had a dual purpose in enacting MCARE: to fairly compensate the victims of medical negligence and to promote affordable medical professional liability insurance for medical providers. *Id.* at 22 (citing *Osborne v. Lewis*, 59 A.3d 1109 (Pa. Super. 2012)). Mr. Dubose asserts this dual purpose is not at odds with permitting wrongful death and survival actions to accrue at the time of the decedent's death. *Id.* Mr. Dubose posits that this favorable provision for medical professional liability plaintiffs may have been in exchange for requiring certificates of merit upon commencing an action and the seven-year statute of repose for all medical professional liability actions. *Id.* at 23. In support, Mr. Dubose directs us to 42 Pa.C.S. § 5524(8), which alters the accrual date for injuries or deaths related to asbestos from when the plaintiff was injured to when the plaintiff was formally diagnosed with an asbestos-related disease. *Id.* at 23-24 (citing *Wygant v. Gen. Elec. Co.*, 113 A.3d 310 (Pa. Super. 2015)). Similarly, Mr. Dubose argues that the legislature similarly extended the

deadline for filing a survival action in medical professional liability cases resulting in death to two years from the date of death. *Id.* at 24.

In additional support of his plain language argument, Mr. Dubose points out that the most important distinction between a statute of repose and a statute of limitations is the act triggering the period of time in which a plaintiff must file a lawsuit. *Id.* at 25. Statutes of limitations begin to run when the cause of action accrues, which is usually the time a plaintiff is injured. *Id.* at 25 (citing 42 Pa.C.S. § 5502(a); *Graver v. Foster Wheeler Corp. Appeal*, 96 A.3d 383 (Pa. Super. 2014); *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033 (Pa. Super. 1999)). In contrast, statutes of repose focus on the defendant's conduct and begin to run when the defendant completes a specified act, and statutes of repose may operate to bar a lawsuit before the cause of action even accrues to the plaintiff. *Id.* at 26 (citing *McConnaughey v. Bldg. Components, Inc.*, 637 A.2d 1331, 1332 n.1 (Pa. 1994)).

Applying this distinction to the plain language Section 513, Mr. Dubose argues Section 513(d) is a statute of limitations because it permits the plaintiff to bring a cause of action within two years of the victim's death, and Section 513(a) is a statute of repose because it limits the time in which to file a survival action to seven years from the date of the tort. *Id.* at 27. Mr. Dubose contends there is no conflict between these two subsections.[8]

---

[8] Similarly, the Pennsylvania Association for Justice (PAJ) filed an amicus curiae brief in support of Mr. Dubose. Therein, it argues that Section 513(d) establishes that a cause of action for a wrongful death or survival brought under the MCARE act accrues at the time of the decedent's death. PAJ Brief at 10. According to PAJ, the general, seven-year statute of repose in Section 513(a) curtails the potential application of the discovery rule in these cases. *Id.* PAJ notes that in *Matharu*, the Superior Court held that MCARE controlled over the general personal injury statute of limitations in 42 Pa.C.S. § 5524. *Id.* at 11. For MCARE wrongful death and survival actions, the two-year period begins to run at the patient's death. *Id.* (citing *Matharu*, 86 A.3d at 263). PAJ does not dispute Appellants' claim that this creates a different statute of limitations (continued…)

We begin our analysis by noting that this case requires us to review the Superior Court's affirmance of the trial court's decision to deny Appellants' motion for JNOV regarding Mr. Dubose's survival action. We review a trial court's grant or denial of JNOV for an abuse of discretion or an error of law. *Reott v. Asia Trend, Inc*, 55 A.3d 1088, 1093 (Pa. 2012) (citation omitted). The question upon which we granted allowance of appeal—whether the Superior Court correctly interpreted the statute of limitations for survival actions under MCARE—is a matter of statutory interpretation. *See Gilbert v. Synagro Cent., LLC*, 131 A.3d 1, 17 (Pa. 2015) (citations omitted). As statutory interpretation is a question of law, our standard of review is de novo and our scope of review is plenary. *Reott*, 55 A.3d at 1093 (citation omitted).

In interpreting a statute, this Court must "ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). To do so, we begin by considering the plain meaning of the statute's language. *Scungio Borst & Assocs. v. 410 Shurs Lane Developers, LLC*, 146 A.3d 232, 238 (Pa. 2016). If the statute's plain language is unambiguous, we must apply it without employing familiar canons of construction and without considering legislative intent.[9] *Id.*; 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"). Further, the Statutory Construction Act states that the headings of a statute do not control the meaning of its plain language, but may

_____

(…continued)
for medical malpractice actions; however, PAJ notes it is the within the legislature's power to do so. *Id.* This is consistent with the legislatively stated purpose of MCARE. *Id.* at 12.

[9] Even though Appellants and Mr. Dubose advocate different interpretations of Section 513(d) of MCARE, neither party argues the statute's language is ambiguous.

be considered to aid in construction. 1 Pa.C.S. § 1924; *see also Commonwealth v. Magwood*, 469 A.2d 115, 119 (Pa. 1983) ("It is also a 'well-established rule' that the title 'cannot control the plain words of the statute' and that even in the case of ambiguity it may be considered only to 'resolve the uncertainty'") (quoting *Sutherland Statutory Construction* § 47.03 (Sands 4th ed. 1973)).

To resolve this case, we must determine whether Section 513(d) is a statute of repose for survival and wrongful death actions or a statute of limitations that modifies the accrual date for survival actions. The United States Supreme Court has explained the distinctions between a statute of repose and a statute of limitations:

> Statutes of limitations and statutes of repose both are mechanisms used to limit the temporal extent or duration of liability for tortious acts. Both types of statute can operate to bar a plaintiff's suit, and in each instance time is the controlling factor. There is considerable common ground in the policies underlying the two types of statute. But the time periods specified are measured from different points, and the statutes seek to attain different purposes and objectives. . . .
>
> In the ordinary course, a statute of limitations creates "a time limit for suing in a civil case, based on the date when the claim accrued." Black's Law Dictionary 1546 (9th ed. 2009) (Black's); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. ——, ——, 134 S.Ct. 604, 610 ("As a general matter, a statute of limitations begins to run when the cause of action "'accrues'" —that is, when 'the plaintiff can file suit and obtain relief'" (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)). Measured by this standard, a claim accrues in a personal-injury or property-damage action "when the injury occurred or was discovered." Black's 1546. . . .
>
> A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant. A statute of repose "bar[s] any suit that is brought after a specified time since the defendant acted

(such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury." Black's 1546. The statute of repose limit is "not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." 54 C.J.S., Limitations of Actions § 7, p. 24 (2010) (hereinafter C.J.S.). The repose provision is therefore equivalent to "a cutoff," *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991), in essence an "absolute . . . bar" on a defendant's temporal liability, C.J.S. § 7, at 24.

Although there is substantial overlap between the policies of the two types of statute, each has a distinct purpose and each is targeted at a different actor. Statutes of limitations require plaintiffs to pursue "diligent prosecution of known claims." Black's 1546. Statutes of limitations "promote justice by preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–349 (1944). Statutes of repose also encourage plaintiffs to bring actions in a timely manner, and for many of the same reasons. But the rationale has a different emphasis. Statutes of repose effect a legislative judgment that a defendant should "be free from liability after the legislatively determined period of time." C.J.S. § 7, at 24; *see also School Board of Norfolk v. United States Gypsum Co.*, 360 S.E.2d 325, 328 (1987) ("[S]tatutes of repose reflect legislative decisions that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability" (internal quotation marks omitted)). Like a discharge in bankruptcy, a statute of repose can be said to provide a fresh start or freedom from liability. Indeed, the Double Jeopardy Clause has been described as "a statute of repose" because it in part embodies the idea that at some point a defendant should be able to put past events behind him. *Jones v. Thomas*, 491 U.S. 376, 392 (1989) (Scalia, J., dissenting).

One central distinction between statutes of limitations and statutes of repose underscores their differing purposes. Statutes of limitations, but not statutes of repose, are subject to equitable tolling, a doctrine that "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his

rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. ——, 134 S.Ct. 1224, 1231–1232 (2014). Statutes of repose, on the other hand, generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control. *See, e.g.*, *Lampf*, *supra*, at 363 ("[A] period of repose [is] inconsistent with tolling"); 4 C. Wright & A. Miller, Federal Practice and Procedure §1056, p. 240 (3d ed. 2002) ("[A] critical distinction is that a repose period is fixed and its expiration will not be delayed by estoppel or tolling"); Restatement (Second) of Torts § 899, Comment g (1977).

Equitable tolling is applicable to statutes of limitations because their main thrust is to encourage the plaintiff to "pursu[e] his rights diligently," and when an "extraordinary circumstance prevents him from bringing a timely action," the restriction imposed by the statute of limitations does not further the statute's purpose. *Lozano*, *supra*, at ——, 134 S.Ct., at 1231–1232. But a statute of repose is a judgment that defendants should "be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason." C.J.S. § 7, at 24. . . .

*CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182-83 (2014) (parallel citations omitted);

*accord Vargo v. Koppers Co., Inc., Eng'g Constr. Div.*, 715 A.2d 423, 425 (Pa. 1998).

With these distinctions in mind, we discuss the nature of a survival action. "At common law, an action for personal injury did not survive death[.]" *Pennock v. Lenzi*, 882 A.2d 1057, 1064 n.8 (Pa. Cmwlth. 2005) (citing *Moyer v. Phillips*, 341 A.2d 441, 442-43 (Pa. 1975)). The General Assembly, in 42 Pa.C.S. § 8302, altered this common law rule and provided that causes of action survive a plaintiff's death:

**42 Pa.C.S. § 8302. Survival action**

All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.

42 Pa.C.S. § 8302.

This Court has explained that a survival action is not an independent cause of action, but a continuation of a cause of action that accrued to the decedent, and the latest time when the statute of limitations runs is at the decedent's death.

> The statute [of limitations] will, of course, begin to run prior to death with respect to injuries that the afflicted individual should reasonably have "discovered" while alive, and, for this reason, it was held in *Anthony* that the survival statute begins to run, "at the latest," at death. 436 A.2d at 183–184. The explanation for this lies in the nature of the survival cause of action, for, as stated in *Anthony*, "the survival statutes do not create a new cause of action; they simply permit a personal representative to enforce a cause of action which has *already accrued* to the deceased before his death." 436 A.2d at 185 (emphasis added) (footnote omitted). *See also Pezzulli v. D'Ambrosia*, 344 Pa. 643, 647, 26 A.2d 659, 661 (1942). . . . [T]he "accrual" concept was expressly recognized in *Anthony*; hence, the statute of limitations was regarded as running, *at the latest*, from the time of death, unless it had earlier "accrued" through the fact that the victim knew, or should reasonably have known, of his injury.
>
> . . .
>
> In the context of survival actions, which, as heretofore discussed, merely permit a personal representative to pursue a cause of action that had already accrued to a victim prior to death, the *Pocono*[ *International Raceway v. Pocono Produce, Inc.*, 468 A.2d 468 (Pa. 1983),] rule causes the statute of limitations to commence to run on the date when the victim ascertained, or in the exercise of due diligence should have ascertained, the fact of a cause of action. In no case, however, can that date be later than the date of death; hence, the statute runs, at the latest, from death. Because death is a definitely ascertainable event, and survivors are put on notice that, if an action is to be brought, the cause of action must be determined through the extensive means available at the time of death, there is no basis to extend application of the discovery rule to permit the filing of survival actions, or wrongful death actions, at times beyond the specified statutory period.

*Pastierik v. Duquesne Light Co.*, 526 A.2d 323, 326-27 (Pa. 1987).

Having set forth the general difference between statutes of repose and statutes of limitations, and the nature of survival actions, we turn to the statute involved in this case. Specifically, we must interpret Section 513 of MCARE, which we set forth in its entirety:

### § 1303.513. Statute of repose

**(a) General rule.--**Except as provided in subsection (b) or (c), no cause of action asserting a medical professional liability claim[10] may be commenced after seven years from the date of the alleged tort or breach of contract.

**(b) Injuries caused by foreign object.--**If the injury is or was caused by a foreign object unintentionally left in the individual's body, the limitation in subsection (a) shall not apply.

**(c) Injuries of minors.--**No cause of action asserting a medical professional liability claim may be commenced by or on behalf of a minor after seven years from the date of the alleged tort or breach of contract or after the minor attains the age of 20 years, whichever is later.

**(d) Death or survival actions.--**If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.

**(e) Applicability.--**No cause of action barred prior to the effective date of this section shall be revived by reason of the enactment of this section.

**(f) Definition.--**For purposes of this section, a "minor" is an individual who has not yet attained the age of 18 years.

---

[10] MCARE defines a "medical professional liability claim" as "[a]ny claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should have been provided." 40 P.S. § 1303.103.

40 P.S. § 1303.513.

We begin by addressing the parties' dispute over when the medical professional liability claim accrued to Mrs. Dubose. Appellants contend the action accrued in 2005, and under the general rule, 42 Pa.C.S. § 5524, the statute of limitations began to run when Mrs. Dubose developed the pressure wound. Mr. Dubose asserts the cause of action accrued on October 18, 2007, when Mrs. Dubose died from sepsis and other injuries. If Appellants are correct that the cause of action accrued in 2005, and the two-year statute of limitations in 42 Pa.C.S. § 5524 applies, both of the survival claims asserted by Mr. Dubose in 2009 would be time-barred. If the cause of action accrued in July 2007, when Mrs. Dubose's pressure ulcer became infected and septic before her admission to Einstein on September 12, 2007, and the two-year statute of limitations in 42 Pa.C.S. § 5524 applies, Mr. Dubose's second case, filed on September 14, 2009, would be barred if the limitations period began to run at the time Mrs. Dubose's wound became infected. However, Mr. Dubose argues Section 513(d) of MCARE modifies the traditional statute of limitations, such that the statute of limitations for survival actions begins to run on the date of the decedent's death. Accordingly, we must address whether Section 513(d) of MCARE modifies the traditional time of accrual of survival actions, as explained in *Pastierik*, *supra*.

We hold that Section 513(d) declares that a survival action in a medical professional liability case resulting in death accrues at the time of death, not at the time of decedent's injury. This conclusion is based on the plain language of Section 513. First, Section 513(a) sets forth a seven-year statute of repose for medical professional liability claims. It provides that "no cause of action . . . may be commenced after seven years from the date of the alleged tort or breach of contract." 40 P.S. § 1303.513(a). Section 513(a) focuses on the defendant's conduct by barring any action that is brought

more than seven years after the defendant acted, which is typical of statutes of repose. *See CTS Corp.*, 134 S. Ct. at 2182-83.  Further, Section 513(a) bars the plaintiff's ability to sue regardless of whether the cause of action accrued, whether the injury occurred, or whether it was discovered.  *See id.* at 2182.  Section 513(a), while providing exceptions for lawsuits involving injuries caused by foreign objects and injuries to minors, does not provide for any equitable considerations that would toll the seven-year period to sue.  *See id.* at 2183.  The statute of repose in Section 513(a) begins running on the date of the tort or breach of contract, no matter when the cause of action accrues (and may even bar a cause of action before it accrues).  However, Section 513(a) does not provide how it relates to Section 513(d).  Instead, Section 513(d) stands separately.

In contrast to the language of Section 513(a), Section 513(d) states that in a medical professional liability claim for wrongful death or survival, "the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death."  40 P.S. § 1303.513(d).  This language mirrors traditional statute of limitation language, such as the two-year limitation contained in 42 Pa.C.S. § 5524: "The following actions and proceedings must be commenced within two years: . . . (2) an action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another."  42 Pa.C.S. § 5524(2).  Section 513(d) focuses not on the defendant's conduct, but on the time within which the plaintiff must sue.  Unlike Section 513(a), it also contains equitable considerations that may toll the two-year period to commence a suit following death: "affirmative misrepresentation or fraudulent concealment of the cause of death."  40 P.S. § 1303.513(d).  The focus on when the plaintiff must commence the action and the enumeration of specific equitable considerations that may toll that time period leads us

to conclude that Section 513(d) is a statute of limitations for medical professional liability death cases that sets the date of accrual at the date of decedent's death. *See CTS Corp.*, 134 S. Ct. at 2182-83.

Section 513(d) establishes a specific statute of limitations for survival and wrongful death actions in medical professional liability cases that prevails over the general statute of limitations for personal injuries actions contained in 42 Pa.C.S. § 5524(2). *See* 1 Pa.C.S. § 1933.[11] It is within the legislature's power to enact a more specific statute of limitations for medical professional liability negligence that results in death, and where the plain language of the statute indicates that it did so, we must give effect to that language. Similarly, Appellants' reliance on *Pastierik*, *Anthony*, and *Pezzulli* to illustrate the general principles of when a survival action accrues and when the statute of limitations begins to run does not compel a different result. *Pastierik*, *Anthony*, and *Pezzulli* predate the legislature's enactment of MCARE and the more specific statute of limitations set forth in Section 513(d).

If the General Assembly wanted to set a statute of repose of two years from the date of decedent's death, it could have provided, similar to Section 513(a), "no cause of action for wrongful death or survival may be commenced after two years from the death." It did not; instead, it created a statute of limitations for medical professional liability cases resulting in death, which accrues at the time of decedent's death. Our interpretation is consistent with the Superior Court's conclusion in *Matharu* in 2014 that Section 513(d) sets forth a different statute of limitations for death cases, and the General Assembly has not amended Section 513 in response to *Matharu*. *See*

---

[11] *See also Commonwealth v. Corban Corp.*, 957 A.2d 274, 277 (Pa. 2008) (holding the more specific five-year statute of limitations for commencing a criminal prosecution for violations of Workers Compensation Act at 77 P.S. § 1039.12 controls over the general two-year statute of limitations in 42 Pa.C.S. § 5552 of the Judicial Code).

*Matharu*, 86 A.3d at 263. Therefore, Mr. Dubose's survival actions were timely filed within two years of Mrs. Dubose's death.[12]

In conclusion, we hold that Section 513(d) of MCARE establishes a two-year statute of limitations for medical professional liability cases in the form of wrongful death or survival actions, which accrues at the time of the decedent's death. Thus, for all the above reasons, we affirm the judgment of the Superior Court.

Justices Todd and Dougherty join the opinion.

Justice Baer files a concurring and dissenting opinion.

Chief Justice Saylor files a dissenting opinion

Justices Donohue and Wecht did not participate in the consideration or decision of this case.

---

[12] Based on this conclusion, we do not need to address the effect of Mr. Dubose holding Mrs. Dubose's power of attorney prior to her death.