2020 PA Super 179

| | | |
|---|---|---|
| LINDA REIBENSTEIN, AS THE ADMINISTRATRIX OF THE ESTATE OF MARY ANN WHITMAN, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : : | |
| v. | : : : : | |
| | : | No. 1624 MDA 2019 |
| CHARLES BARAX, M.D.; AND MERCY HOSPITAL, SCRANTON | : : : : | |
| _____ | : | |
| LINDA REIBENSTEIN, AS THE ADMINISTRATRIX OF THE ESTATE OF MARY ANN WHITMAN, DECEASED | : : : : : | |
| Appellant | : : : : : | |
| v. | : : : : : | |
| PATRICK D. CONABOY, M.D.; AND COGNETTI & CONABOY FAMILY PRACTICE, P.C. | : : : : : | |
| Appellees | : | |

Appeal from the Order Entered August 29, 2019
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2016-01716

BEFORE: OLSON, J., DUBOW, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.: **FILED JULY 30, 2020**

The Medical Care Availability and Reduction of Error Act ("MCARE")

provides a statute of limitations that requires a claimant to commence a

wrongful death or a survival action asserting a medical professional liability claim within two years after the death. ***See*** 40 P.S. § 1303.513(d). However, that statute of limitations is subject to equitable tolling for "affirmative misrepresentation or fraudulent concealment of the cause of death." ***Dubose v. Quinlan***, 173 A.3d 634, 647 (Pa. 2017) (quoting 40 P.S. § 1303.513(d)).

Here, the trial court granted summary judgment in favor of Patrick D. Conaboy, M.D., and Cognetti and Conaboy Family Practice, P.C. (collectively, "the Conaboy Defendants"), concluding that this action was commenced more than two years after the death and there was "no evidence of 'affirmative misrepresentation or fraudulent concealment of the cause of death.'" ***See*** Trial Court Opinion, 10/23/19, at 4. We disagree that there was "no evidence" to support the application of subsection 1303.513(d)'s equitable tolling provision. We therefore vacate the summary judgment order.

We derive the factual and procedural history in this matter from the trial court's October 23, 2019 opinion and our review of the certified record. Because we are reviewing an order granting summary judgment, we "take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party," which here means in the light most favorable to Appellee. ***See Nicolaou v. Martin***, 195 A.3d 880, 891 (Pa. 2018).

Mary Ann Whitman died on April 28, 2010, as a result of a ruptured abdominal aortic aneurysm. Five days before her death, at the request of her primary care physician, Dr. Conaboy, Mrs. Whitman underwent a CT scan, which Dr. Charles Barax reviewed. After reviewing the scan, Dr. Barax drafted

a radiology report that stated that Mrs. Whitman had an abdominal aortic aneurysm that was "poorly visualized" on the study. His report did not document an aneurysm rupture, or any concern of a possible rupture. The report states, "Dr. Conaboy was contacted with this study was [*sic*] read -with the findings." **See** Radiology Report, April 23, 2010, at 2, R.R. 100a.

Approximately one year after Mrs. Whitman's death, in April 2011, the administratrix of Mrs. Whitman's estate, Linda Reibenstein, commenced this suit and filed a complaint against Dr. Barax and his employer, Mercy Hospital, Scranton, asserting causes of action under the Wrongful Death Act and the Survival Act. As discovery proceeded, Reibenstein made several unsuccessful attempts to schedule Dr. Barax's deposition. She obtained the trial court's intervention and she finally deposed Dr. Barax in February 2015. Dr. Barax testified during this deposition that he spoke with Dr. Conaboy, explained to him that the CT scan showed a previously undocumented abdominal aortic aneurysm, but because he could not visualize the aneurysm very well, he could not confirm that it was not bleeding or rupturing.

Based on Dr. Barax's deposition testimony, Reibenstein initiated a separate action against the Conaboy Defendants in March 2016, asserting both wrongful death and survival causes of action. **See** Complaint, 6/03/16. The trial court consolidated the two cases.

The Conaboy Defendants ultimately sought summary judgment citing the general two-year statute of limitations for personal injury actions, and arguing that the discovery rule did not apply here. The trial court initially

denied the motion, concluding that there were genuine issues of material fact. On reconsideration, however, the court reversed course and granted summary judgment because it found "no evidence of affirmative misrepresentation or fraudulent concealment of the cause of death," and granted summary judgment in favor of the Conaboy Defendants. Trial Ct. Op., at 4. This timely appeal followed.

Reibenstein raises one issue on appeal:

I.      Did the trial court err in granting summary judgment in favor of defendants, Patrick D. Conaboy, M.D. and Cognetti & Conaboy Family Practice, P.C., on the ground that, pursuant to 40 Pa.C.S.A[.] § 1303.513(d) of the [MCARE] Act, the statute of limitations governing [Reibenstein's] wrongful death claim against [Dr. Conaboy] could not be equitably tolled because decedent's medical cause of death was correctly identified on decedent's death certificate?

Reibenstein's Br. at 4 (unnecessary capitalization omitted).

We review the grant of summary judgment for errors of law and abuse of discretion. **See In re Risperdal Litig.**, 223 A.3d 633, 639 (Pa. 2019).

> [S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt. Because the issue here, namely whether there are genuine issues of material fact, is a question of law, our standard of review is *de novo* and our scope of review is plenary.

**Id.** (citations and quotation marks omitted).

- 4 -

The statutory interpretation of the equitable tolling provision in subsection 1303.513(d) of MCARE presents a question of law. Thus, our standard of review is *de novo* and our scope of review is plenary. ***See Bowling v. Office of Open Records***, 75 A.3d 453, 466 (Pa. 2013).

When interpreting a statute, we are guided by the Statutory Construction Act, which recognizes that our primary goal is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). To do so, we first consider the plain meaning of the statute's language, which, if it is unambiguous, we must follow. ***See*** 1 Pa.C.S.A. § 1921(b). A statutory provision is ambiguous if it is reasonably susceptible to more than one interpretation. ***Burke ex rel. Burke v. Indep. Blue Cross***, 103 A.3d 1267, 1273 (Pa. 2014). In determining if a provision is ambiguous, we construe its words and phrases "according to rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903(a).

Hence, "if a term is clear and unambiguous, we are prohibited from assigning a meaning to that term that differs from its common everyday usage for the purpose of effectuating the legislature's intent." ***Commonwealth v. Jackson***, 111 A.3d 1187, 1189 (Pa.Super. 2015) (citation omitted). If we conclude that the statutory provision at issue is ambiguous, we then apply the Statutory Construction Act's instructions "to ascertain and effectuate" the General Assembly's intent. ***See A Special Touch v. Com. Dep't of Labor & Indus.***, No. 30 MAP 2019, 2020 WL 1932622, at *10 (Pa. Apr. 22, 2020).

Section 1303.513 of MCARE establishes the statutes of repose and statutes of limitations for medical professional liability claims. Subsection 1303.513(d) includes the tolling provision at issue here:

**(d) Death or survival actions.—**If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.

40 P.S. § 1303.513(d).

Reibenstein argues that Dr. Barax's concealment of his communications with Dr. Conaboy concerning Mrs. Whitman's aneurysm is directly related to the cause of Mrs. Whitman's death, and, therefore, based on subsection 1303.513(d), the two-year statute of limitations should have been equitably tolled. *See* Reibenstein's Br. at 18-20. Reibenstein notes that MCARE does not define "cause of death" or explain how a defendant must conceal the cause of death for equitable tolling to apply. She suggests, based on the legislative intent behind the statute, that the phrase "affirmative misrepresentation or fraudulent concealment of the cause of death" should not be limited to a defendant's failing to record the correct cause of death on a death certificate. Rather, in her view, it should also encompass those acts that were part of the chain of causation leading to the patient's death. *See id.* at 15-16. She argues that the trial court's interpretation of subsection 1303.513(d) is overly restrictive and does not effectuate the intent of either subsection 1303.513(d) or MCARE as a whole.

In response, Dr. Conaboy asserts that the plain language of subsection 1303.513(d) is not ambiguous. Therefore, he claims that because Mrs. Whitman died of a ruptured abdominal aortic aneurysm, and because that is recorded as the cause of death on her death certificate, the statute of limitations may not be tolled. *See* Conaboy Br. at 10-11.

Our review discloses that "cause of death" is not defined in this section or any other section of MCARE. Nor have we found any controlling authority directly addressing the pertinent question here: whether "cause of death" as used in subsection 1303.513(d) means the immediate, medical cause of death, such as is ordinarily listed on the decedent's death certificate, or includes conduct leading to the decedent's death but that is not the immediate, medical cause of the death.

We conclude that both interpretations are reasonable and that subsection 1303.513(d) is therefore ambiguous in this regard. We therefore turn to the Statutory Construction Act to resolve the ambiguity. That Act provides a non-exclusive list of guideposts for identifying the General Assembly's intent when construing an ambiguous statutory provision:

> When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
> > (1) The occasion and necessity for the statute.
> >
> > (2) The circumstances under which it was enacted.
> >
> > (3) The mischief to be remedied.
> >
> > (4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921(c).

Here, the stated purpose of MCARE is to ensure, *inter alia*, that high quality health care is available in the Commonwealth and provide a person who has sustained injury as a result of medical negligence by a healthcare provider with fair compensation, while controlling the costs of medical malpractice insurance rates. ***See*** 40 P.S. § 1303.102. Subsection 1303.513(d) of MCARE is a statute of limitations for medical professional liability wrongful death and survival action. ***See Dubose***, 173 A.3d at 647.

Significantly, in drafting this statute of limitations, the General Assembly included a provision to allow for equitable tolling of the two-year period in cases where there has been an "affirmative misrepresentation or fraudulent concealment of the cause of death." 40 P.S. § 1303.513(d). Clearly, the General Assembly included the equitable tolling provision to protect patients who have pursued their rights, and despite this, "extraordinary circumstance prevents [them] from bringing a timely action." ***Dubose***, 173 at 645 (citation omitted). In such extraordinary circumstances, "the restriction imposed by the statute of limitations does not further the statute's purpose." ***Id.*** (citation omitted).

The General Assembly's inclusion of such an exception recognizes that wrongful death and survival actions may involve situations where the patient's interest in fair compensation outweighs the interest in limiting medical malpractice insurance costs. It is in furtherance of the stated purpose of **fair compensation** that we interpret "affirmative misrepresentation or fraudulent concealment of the cause of death" to encompass those acts which caused the patient to die. Where a medical practitioner hides an action that was directly related to the cause of the patient's death, the Commonwealth's interest in redress outweighs the interest in control of medical malpractice insurance costs.

Accordingly, we hold that "affirmative misrepresentation or fraudulent concealment of the cause of death" means affirmative misrepresentations about or fraudulent concealment of conduct the plaintiff alleges led to the decedent's death.

Having so concluded, we turn again to the situation presented in the instant case. In its order granting the Conaboy Defendants' motion for summary judgment, the trial court held that because Mrs. Whitman died of an abdominal aortic aneurysm, and the death certificate lists aortic aneurysm as the cause of death, Reibenstein was not entitled to equitable tolling of the statute of limitations. Based on our interpretation of subsection 513(d), we are constrained to conclude that the trial court erred in concluding that Reibenstein's claims were barred by the statute of limitation, and so erred in granting summary judgment in favor of Dr. Conaboy.

Having found that the court erred, we do not reach Reibenstein's claim that there was a fraudulent concealment or affirmative misrepresentation of an act by Dr. Conaboy related to Mrs. Whitman's death. We leave that issue to the trial court on remand. Therefore, we vacate the order of the trial court that granted summary judgment in favor of Dr. Conaboy, and we remand to the trial court.[1]

Order vacated, case remanded, jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/30/2020

---

[1] On November 7, 2019, the Conaboy Defendants filed an application to quash this appeal. They point to a "Full and Final Release" entered after the trial court granted summary judgment in their favor. They argue that the language of the release had the effect of discharging Reibenstein's claims against them, and as a result, "any appeal is a nullity and should be quashed." Application to Quash at 5. They cite no authority for this proposition, and the subsequent settlement and release does not affect our jurisdiction. Accordingly, we deny the application to quash.

They alternatively ask us to remand to the trial court so that court may determine whether the settlement bars this appeal. We deny this request as well, without prejudice to the Conaboy Defendants' ability to argue on remand that the release discharged Reibenstein's claims against them.

- 10 -