IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| CLEARFIELD COUNTY, PENNSYLVANIA, | : | No. 10 WAP 2025 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered |
| | : | November 1, 2024, at No. 193 CD |
| v. | : | 2024, affirming the Order of the |
| | : | Court of Common Pleas of Clearfield |
| | : | County Civil Divison entered |
| TRANSYSTEMS CORPORATION, | : | February 15, 2024, at No. 2023-31- |
| SUCCESSOR TO L. ROBERT KIMBALL | : | CD. |
| AND ASSOCIATES, INC., LEONARD S. | : | |
| FIORE, INC., AND SHOWALTER | : | ARGUED:  October 7, 2025 |
| MASONRY, INC., | : | |
| | : | |
| Appellees | : | |

## OPINION

**JUSTICE MUNDY**                                              **DECIDED:  APRIL 30, 2026**

We granted allowance of appeal to consider whether the Commonwealth Court properly affirmed the trial court order sustaining the preliminary objections of Appellees Transystems Corporation, successor to L. Robert Kimball and Associates, Inc. (Kimball), Leonard S. Fiore, Inc. (Fiore), and Showalter Masonry, Inc. (Showalter), and dismissing the complaint of Appellant Clearfield County (County) based on the 12-year construction statute of repose in Section 5536 of the Judicial Code, 42 Pa.C.S. § 5536.  The Commonwealth Court concluded the common law doctrine of *nullum tempus occurrit regi* (*nullum tempus*), translated as "no time runs against the king," could not preclude the 12-year statute of repose in Section 5536 from abolishing the County's cause of action. Because we conclude the doctrine of *nullum tempus* cannot preclude the application of

the Section 5536 statute of repose, we affirm the Commonwealth Court's order, albeit on different grounds.

## I. FACTS AND PROCEDURAL HISTORY

Around the year 1977, County entered into a contract with Kimball, an architectural and engineering firm, for the construction of a new County jail. Compl., 1/6/23, at ¶ 12.[1] According to County, Kimball prepared the construction and design drawings, retained Fiore as the project's general contractor, and enlisted Showalter for the masonry work. *Id.* at ¶ 13. The jail's construction was completed in 1981. On March 4, 1981, the Pennsylvania Department of Labor and Industry issued a certificate of occupancy, and the jail began employing staff and housing prisoners that year. Tr. Ct. Op., 2/15/24, at 5.

On July 27, 2021, County contracted with ABM Building Solutions, LLC (ABM) for a renovation project at the jail. Compl., 1/6/23, at ¶ 30. During preparation for the renovation project, which included roof work, ABM discovered that the jail's original roof was not connected to its masonry walls and was instead "floating on top of the building." *Id.* at ¶¶ 34-35. To remedy this defect, County paid ABM $3,878,660.00 to install a bond beam around the building's perimeter to attach the roof to the masonry walls. *Id.* at ¶ 40.

On January 6, 2023, County filed a nine-count complaint asserting three claims against each Appellee for negligence, fraudulent misrepresentation or nondisclosure, and breach of contract. Each Appellee filed preliminary objections arguing, among other issues, the trial court lacked jurisdiction because County did not file the complaint within 12 years of the completion of the jail's construction as required by the statute of repose in 42 Pa.C.S. § 5536. Section 5536 contains a 12-year statute of repose for actions arising out of alleged defective construction projects, as follows:

---

[1] County did not attach the contract to its complaint, and it later admitted, in response to preliminary objections, "the Contract was not attached to the Complaint because it is lost." Pl.'s Ans. to Prelim. Objs. to Pl.'s Compl. by Def. Showalter Masonry, Inc., 2/24/23, at 5.

(a) **General rule.**—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

(1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.

(2) Injury to property, real or personal, arising out of any such deficiency.

(3) Injury to the person or for wrongful death arising out of any such deficiency.

(4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).

(b) **Exceptions.**—

(1) If an injury or wrongful death shall occur more than ten and within 12 years after completion of the improvement a civil action or proceeding within the scope of subsection (a) may be commenced within the time otherwise limited by this subchapter, but not later than 14 years after completion of construction of such improvement.

(2) The limitation prescribed by subsection (a) shall not be asserted by way of defense by any person in actual possession or control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or wrongful death for which it is proposed to commence an action or proceeding.

(c) **No extension of limitations.**—This section shall not extend the period within which any civil action or proceeding may be commenced under any provision of law.

42 Pa.C.S. § 5536; *see also Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 84 (Pa. 1994)

("Section 5536 is a statute of repose, rather than a statute of limitation.").

County responded to the preliminary objections by contending, *inter alia*, that the doctrine of *nullum tempus* precluded the statute of repose from operating as a defense to its claims.[2] *See, e.g.*, Pl.'s Ans. to Prelim. Objs. to Pl.'s Compl. by Def. Leonard S. Fiore, Inc., 2/24/23, at 4, 7.

The trial court sustained Appellees' preliminary objections, concluding "that the doctrine of *nullum tempus occurrit regi* is not applicable and that the 12-year statute of repose found at 42 Pa.C.S. § 5536 requires the dismissal of the County's complaint." Tr. Ct. Op., 2/15/24, at 18.

In reaching this conclusion, the trial court first concluded that Appellees proved the three elements of the Section 5536 construction statute of repose because: (1) the jail was an improvement to real estate; (2) the jail's construction was completed in 1981 as evidenced by the certificate of occupancy and the housing of prisoners;[3] and (3) Kimball was the architectural firm that designed and oversaw the project, Transystems is a successor to Kimball, and Fiore and Showalter were both contractors involved in the jail's construction. *Id.* at 5. Although Appellees proved their statute of repose defense, the trial court explained that was not dispositive of the time bar issue because "the county has a possible 'defense to the defense,' which may render the statute of repose useless

---

[2] An alternate phrasing of the doctrine is *nullum tempus occurrit republicae* ("time does not run against the state"). *Commonwealth, Dep't of Transp. v. J.W. Bishop & Co., Inc.*, 439 A.2d 101, 102 n.2 (Pa. 1981).

[3] In the trial court, County contended that the jail was never "completed" because the roof was never attached to the masonry walls. After holding a hearing, the trial court determined the construction of the jail was completed in 1981. The Commonwealth Court explained that the issue of when a construction project is completed is a mixed question of law and fact, such that the trial court was not bound by the allegations in the complaint. *Clearfield Cnty. v. Transystems Corp.*, 326 A.3d 1027, 1033-34 (Pa. Cmwlth. 2024). Further, the Commonwealth Court held "the trial court did not err by concluding that, for purposes of Section 5536, the [j]ail's construction had been completed in 1981." *Id.* at 1034. County did not challenge this finding on appeal to this Court.

as a defense to the county's claims." *Id.* Accordingly, the trial court proceeded to analyze County's assertion of *nullum tempus.*

The trial court framed the issue as whether Section 5536 precludes County's assertion of *nullum tempus*. *Id.* at 6. To resolve the issue, the trial court applied the principles of statutory construction in 1 Pa.C.S. § 1921.[4] *Id.* at 7. It observed that statutes of repose originated in the construction industry as a reaction to the perceived limitless liability that a statute of limitations' discovery rule provided in cases where the plaintiff's injury did not occur until decades after a project's completion. *Id.* at 8 (quoting Joseph Mack, *Nullum Tempus: Governmental Immunity to Statutes of Limitation, Laches, and Statutes of Repose*, 73 DEF. COUNS. J. 180, 183 (2006)).

Turning to the underlying policy justifications, the trial court explained a statute of limitations serves three purposes: "(1) the preservation of evidence; (2) the right of potential defendants to repose; and (3) administrative efficiency and convenience[;]" whereas a statute of repose has the singular purpose of protecting classes of potential defendants—deemed as economically valuable by the legislature—from the financial consequences of liability extending beyond a certain, definite point. *Id.* at 9-10. In the trial court's view, the legislature sent a message in Section 5536 that "we're passing this statute to protect architects, engineers, contractors, etc. from the threat of timeless potential liability because we believe that the interests of the construction industry and those of the residents of the Commonwealth would each be advanced thereby." *Id.* at 10. While Section 5536(b) contains exceptions to the 12-year repose period, the trial court noted it does not explicitly except actions brought by the Commonwealth, its agencies, or municipal corporations. *Id.*

---

[4] Although the trial court did not expressly find Section 5536 was ambiguous, it nonetheless analyzed the factors in 1 Pa.C.S. § 1921(c), used to resolve ambiguities.

Continuing on, the trial court explained that court decisions have split on the issue of whether *nullum tempus* applies to statutes of repose, but "there is a dearth of cases applying Pennsylvania law and addressing whether [*nullum tempus*] can defeat a defense based upon a statute of repose." *Id.* It then discussed two Pennsylvania cases addressing the applicability of *nullum tempus* to a statute of repose, *Manheim Central School District v. Foreman Architects-Engineers, Inc.*, 2017 WL 10440562 (C.P. Lancaster 2017), and *Belle Vernon Area School District v. Tremco, Inc.*, 2023 WL 5337286 (W.D. Pa. Aug. 18, 2023) (memorandum opinion). The trial court stated that the takeaway from *Manheim*, which had similar facts to this case, "can simply be stated to be that *nullum tempus* does not apply to the 12-year statute of repose." Tr. Ct. Op., 2/15/24, at 11. Similarly, the trial court recounted that in *Tremco*, the federal district court predicted that our Court would not apply *nullum tempus* to defeat Section 5536's statute of repose. *Id.* at 13. Lastly, the trial court cited our Court's decision in *Dubose v. Quinlan*, 173 A.3d 634 (Pa. 2017), for the principle that a statute of repose is not subject to estoppel or tolling unless the statute explicitly contains exceptions. Tr. Ct. Op., 2/15/24, at 15-16.

In further support of its decision, the trial court cited the statutory construction rules in 1 Pa.C.S. § 1924, providing a statute with express exceptions shall be construed to exclude all other exceptions, and 1 Pa.C.S. § 1922(5), permitting a presumption that the legislature intends to favor the public interest over any private interest. *Id.* at 16-17. Applying Section 1924, the trial court noted the legislature could have included an exception for actions brought by the Commonwealth, but it did not. *Id.* at 17. Regarding Section 1922(5)'s presumption, the trial court reasoned that Section 5536 represented a legislative intention to create a protected class, and "the public's interest would be advanced by enforcing the literal words of Section [5536]." *Id.* Based on the foregoing

considerations, the trial court concluded *nullum tempus* did not apply and the Section 5536 statute of repose required the dismissal of County's complaint. *Id.* at 18.

Although it disposed of the issue, the trial court nonetheless continued, in anticipation of an appeal, that if its ruling on *nullum tempus* was reversed, "an equally problematic issue" will arise, which is whether County was acting in its "governmental capacity" when it constructed the jail. *Id.* That issue would arise, according to the trial court, because *nullum tempus* does not extend to political subdivisions unless they are "seeking to enforce strictly public rights, that is, when the cause of action accrues to them in their governmental capacity and the suit is brought to enforce an obligation imposed by law as distinguished from one arising out of an agreement that was voluntarily entered into by the political subdivision." *Id.* (citing *Altoona Area Sch. Dist. v. Inter-State Tile Mantel Co., Inc.*, 618 A.2d 1129 (Pa. Cmwlth. 1992)). The trial court expressed difficulty with concluding the County's construction of a jail was not a governmental function and not done in its governmental capacity. *Id.* at 19. It noted that Pennsylvania's first Constitution of 1776 mentioned jails but did not expressly mandate their construction. *Id.* at 20. However, the trial court pointed out that when the drafters wrote the first Constitution, "there were already several counties, already sheriffs, already jails, already jailors, and, for certain, already lawbreakers." *Id.* at 22. The trial court posited that "[a] constitutional provision or statute explicitly requiring the housing of prisoners in a building built by a county or a neighboring county was wholly unnecessary. The Commonwealth's founders knew it would be done in order to establish and preserve the newly created state." *Id.* This led the trial court to conclude that the lack of an explicit constitutional provision or a statute mandating the construction of county jails did not establish that a county was not acting in its governmental capacity when it built a jail. *Id.* County appealed the trial court's decision to the Commonwealth Court.

In a unanimous published opinion, the Commonwealth Court affirmed the trial court's order.  Rejecting County's argument that the trial court erred by concluding *nullum tempus* could not overcome the statute of repose, the court noted that it has previously explained that *nullum tempus* applies to statutes of limitations.  *Transystems Corp.*, 326 A.3d at 1034.  It further observed that County did not cite any authority for its position that *nullum tempus* applies to the Section 5536 statute of repose in the same way it applies to statutes of limitations, and the federal district court in *Tremco* predicted that this Court would not apply *nullum tempus* to Section 5536.  *Id.* at 1035, 1036-37 n.10.  Unlike the trial court, however, the Commonwealth Court then assumed, *arguendo* and without further discussion, that *nullum tempus* applied to statutes of repose.  *Id.* at 1036.

The Commonwealth Court explained that for *nullum tempus* to apply here, the County would need to meet two requirements: "(1) that it built the [j]ail in its governmental capacity; and (2) in building the [j]ail, it was enforcing 'an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant." *Id.* at 1037.  The court stated the trial court agreed with County that it met the first requirement, *i.e.*, that it constructed the jail in its governmental capacity.  *Id.* Proceeding to the second requirement, it noted County cited statutory and constitutional provisions that "clearly *authorize* counties to construct jails, [and] the County asks this [c]ourt to interpret those statutory provisions as *obligating* counties to do so."  *Id.* (emphasis in original).

The Commonwealth Court disagreed that any law imposed an obligation on counties to construct jails.  First, the court found that Sections 202, 203, and 1701 of the former County Code[5] upon which the County relied "provide general statutory *authority*

[5] Act of August 9, 1955, P.L. 323, No. 130 *as amended*, 16 P.S. §§ 202, 203, 1701, *repealed by* Act No. 2024-14, May 8, 2024, P.L. 50, No. 14, § 5(2) (effective July 8, 2024). Act No. 2024-14 amended, consolidated, and repealed sections of the County Code.  The (continued…)

for county commissioners to exercise certain powers." *Transystems Corp.*, 326 A.3d at 1038 (emphasis in original).[6]  Second, the Commonwealth Court found "Section 2404-B of the Administrative Code of 1929, 71 P.S. § 655, . . . *authorized* county commissioners to construct jails" and promulgated criteria for commissioners to consider, but it did not "impose[] an affirmative duty on commissioners to construct county jails."  *Id.* (footnote omitted) (emphasis in original).[7]  Third, the court rejected County's argument that the

---

sections County cited are now located at 16 Pa.C.S. §§ 12106 (formerly 16 P.S. § 202), 12107 (formerly 16 P.S. § 203), and 14901 (formerly 16 P.S. § 1701).

[6] Former Section 202 of the County Code, 16 P.S. § 202, provided "[e]ach county shall have capacity as a body corporate to: . . . (4) [m]ake contracts for carrying into execution the laws relating to counties and for all lawful purposes. . . . (6) [t]o make appropriations for any purpose authorized by this or any other act of the General Assembly."  16 P.S. § 202 (repealed and replaced by 16 Pa.C.S. § 12106 with minimal changes).  Former Section 203 of the County Code, 16 P.S. § 203, stated "[t]he corporate power of each county shall be vested in the county commissioners."  16 P.S. § 203 (repealed and replaced by 16 Pa.C.S. § 12107 with no changes).  Former Section 1701 of the County Code, 16 P.S. § 1701, specified "[t]he county commissioners shall be the responsible managers and administrators of the fiscal affairs of their respective counties in accordance with the provisions of this act and other applicable law."  16 P.S. § 1701 (repealed and replaced by 16 Pa.C.S. § 14901 with minor changes).

[7] Section 2404-B of the 1929 Administrative Code provides:

> **(a) Criteria.—**The board of commissioners shall, in addition to compliance with the terms, conditions and requirements set forth in the request for proposals, consider the following criteria in evaluating proposals for the adaptive reuse of former jail facilities or construction of new jail facilities:
>
> (1) The cost of the proposer's adaptive reuse or new construction proposal.
>
> (2) Experience of the proposer.
>
> (3) Preservation of the distinct architectural design and integrity of the former jail facilities.
>
> (4) Adherence to prevailing wage laws and other work force standards.

(continued…)

mandate to have a county jail oversight board in Section 1723 of the Prisons and Parole Code, 61 Pa.C.S. § 1723, contained an implicit mandate that counties construct jails for the board to oversee.[8]  *Id.*  The Commonwealth Court noted Section 1723 was not applicable to County because Section 1722 of the Prisons and Parole Code defined "county" as "[a] county of the second class or a county that has elected to be governed by the provisions of this subchapter[,]" and County was neither a county of the second class nor a county with a home rule charter electing to be subject to the subchapter's

---

> (5) Commitment to enter into voluntary contracts with disadvantaged business enterprises.
>
> **(b) Selection of proposal.**—After due consideration of proposals in accordance with the criteria under subsection (a), the board of commissioners may select a proposal and award a contract to a responsible proposer for the adaptive reuse of a former jail facility or construction of a new jail facility under an alternative contracting procedure.

71 P.S. § 655.

[8] Section 1723 of the Prisons and Parole Code provides, in relevant part:

> **(a) Establishment.**—There is hereby established in each county a county jail oversight board which shall be named the (Name of County) County Jail Oversight Board. The board shall be a continuation of the county prison board originally established under the former act of December 10, 1980 (P.L. 1152, No. 208), known as the Second Class County Prison Board Act, and former Article XXX-A of the act of July 28, 1953 (P.L. 723, No. 230), known as the Second Class County Code.
>
> . . .
>
> **(d) Counties that may elect to be subject to subchapter.**— Any county that has adopted a home rule charter may elect by resolution of the governing body of the county to be governed by the provisions of this subchapter.

61 Pa.C.S. § 1723 (footnotes omitted).

provisions. *Id.* at 1039 (quoting 61 Pa.C.S. § 1722) (emphasis omitted). The court further observed that Section 1723 was enacted in 2009, which was 28 years after the jail was completed, and it could not have obligated County to construct a jail in the 1970s or 1980s. *Id.* Fourth, the Commonwealth Court disagreed with County that article I, section 14 of the Pennsylvania Constitution, which contains a mandate to set conditions for bail, contains an inverse mandate to construct jails to hold pretrial detainees who cannot post bail.[9] In the court's view, "the government's obligation to set bail conditions and responsibility to house prisoners is not a mandate that each county construct its own jail." *Id.* For these reasons, the court concluded that *nullum tempus* did not apply because County was not complying with an obligation imposed by law in constructing the jail. *Id.* Accordingly, it affirmed the trial court's order.

## II. ISSUE AND STANDARD OF REVIEW

This Court granted review of the following issue raised by County:

> The question raised in this Petition is one of first impression, to wit: Does the doctrine of *nullum tempus occurrit regi* preclude the Statute of Repose defense in an action brought by Clearfield County against the architect and the contractors who negligently designed and constructed the Clearfield County Jail where the County was seeking to vindicate public rights and protect public property?

---

[9] Article I, section 14 of the Pennsylvania Constitution states:

> All prisoners shall be bailable by sufficient sureties, unless for capital offenses or for offenses for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it."

PA. CONST., art. I, § 14.

338 A.3d 110 (Pa. 2025) (per curiam).

"[G]enerally, statutes of repose are jurisdictional and their scope is a question of law for courts to determine." *Gilbert v. Synagro Cent., LLC*, 131 A.3d 1, 15 (Pa. 2015). However, "there may be cases in which the applicability of a statute of repose turns on resolution of factual issues. In such cases, the facts relevant to jurisdiction are so intertwined with those relating to the merits of the action, the jurisdictional determination will necessarily involve fact finding." *Id.* As this case does not involve such factual disputes and requires the resolution of only legal issues, our standard of review is *de novo* and our scope of review is plenary. *See Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008) ("the standard of review in determining whether a court has subject matter jurisdiction is *de novo* and the scope of review is plenary.") (quoting *In re Admin. Order No. 1-MD-2003*, 936 A.2d 1, 5 (Pa. 2007).

## III. APPLICABILITY OF *NULLUM TEMPUS* TO THE SECTION 5536 STATUTE OF REPOSE

### A. PARTIES' ARGUMENTS

County argues that *nullum tempus* precludes the Section 5536 statute of repose defense in this case because it filed suit to vindicate public rights and protect public property. Quoting this Court's decisions in *Commonwealth Department of Transportation v. J.W. Bishop & Co., Inc.*, 439 A.2d 101 (Pa. 1981) (*J.W. Bishop II*), and *Commonwealth v. Rockland Construction Co.*, 448 A.2d 1047 (Pa. 1982), County highlights that the underlying public policy of *nullum tempus* is to vindicate public rights and protect public property. County's Br. at 11-12. Because County was pursuing a public purpose in contracting for the construction of the jail, County asserts it was not engaging in its own voluntary transaction. *Id.* at 13. County also notes that the legislature and the state constitution authorized it to construct a county jail. *Id.* at 14-15 (relying on Sections 202,

203, and 1701 of the County Code, Section 1723 of the Prisons and Parole Code, and article I, section 14 of the Pennsylvania Constitution). Reiterating the argument it presented to the Commonwealth Court, County maintains the statutory and constitutional directives to set conditions for bail contain a "converse" mandate to counties to construct jails to house pretrial detainees who cannot secure bail. *Id.* at 15-16.

County further contends that we should hold, for the first time, that *nullum tempus* applies to the statute of repose. County asserts that the distinction between statutes of limitations and statutes of repose—*i.e.*, that statutes of limitations bar a party's right to a remedy whereas statutes of repose completely abolish causes of action—"is of little consequence when the [p]laintiff is a governmental entity seeking to protect public property and vindicate public rights. This is because [*n*]*ullum tempus* allows governmental entities to initiate causes of action that would be time-barred, if brought by an individual or private company." *Id.* at 18-19. County emphasizes that it and its citizens have been deprived of over $3.8 million because of negligent construction, and "[i]t should be of no consequence that the bad workmanship occurred more than 2-years after construction or 12-years after construction because, under either scenario, the citizens of Clearfield County have been, and will be, deprived of public funds." *Id.* at 19.

Lastly, County acknowledges that a federal magistrate judge in 2023 predicted that this Court would not apply *nullum tempus* to a statute of repose in *Tremco*. In response to that decision, the County briefly notes the federal district court stated *nullum tempus* can be applied to defeat a statute of repose in appropriate circumstances, but it did not evaluate the facts to determine whether the case presented such appropriate circumstances. *Id.* at 21. Accordingly, County asks us to reverse the trial court order sustaining Appellees' preliminary objections and to remand the case to the trial court for further proceedings. *Id.*

In contrast, Appellee Fiore argues the doctrine of *nullum tempus* does not allow County to avoid the Section 5536 statute of repose. Fiore maintains that state and federal courts applying Pennsylvania law have consistently refused to apply *nullum tempus* as an exception to the Section 5536 statute of repose. Fiore's Br. at 10. Specifically, Fiore discusses *Manheim*, in which the Court of Common Pleas of Lancaster County held that the statute of repose barred a negligence claim filed over 23 years after the construction of a school was completed. *Id.* at 11. Fiore notes the court in *Manheim* rejected the school district's reliance on *nullum tempus* "because case law consistently relates the doctrine to only statutes of limitations." *Id.* (quoting *Manheim*, 2017 WL 10440562, at *4).

Similarly, Fiore explains the federal district court in *Tremco* applied the Section 5536 statute of repose to bar a school district's breach of contract action against a defendant that designed and constructed a bus canopy at the school that collapsed 14 years after it was installed. *Id.* at 11. The *Tremco* Court dismissed the school district's *nullum tempus* argument based on *Manheim*, cases from other jurisdictions, and its prediction that this Court would hold that *nullum tempus* cannot defeat the statute of repose. *Id.* at 12. The federal district court, like the trial court here, also quoted and relied upon the Mack article from the Defense Counsel Journal, *supra*, in which the author explains that the two policy justifications supporting *nullum tempus* "are undermined when applied to statutes of repose." *Id.* at 12-14 (quoting Mack, *supra*, at 194-95). According to that author, the first policy rationale for *nullum tempus* is that governmental agents are preoccupied with the affairs of the state and cannot file suit in time, which is irrelevant to statutes of repose because they bar claims regardless of whether the injured party has knowledge of the injury. *Id.* at 13. Additionally, the second policy justification is to protect the public fisc from the negligence of public officials, which does not apply to statutes of repose because a statute of repose reflects a legislative judgment that the public interest

is best served through protecting a class of defendants from endless liability. *Id.* Based on *Manheim* and *Tremco*, Fiore maintains we should affirm the Commonwealth Court and hold that *nullum tempus* cannot circumvent the Section 5536 statute of repose.

Along these lines, Fiore contends applying *nullum tempus* to the statute of repose would be in contravention of the legislative judgment that construction industry professionals should be free from liability after 12 years and would instead impose timeless liability on them. *Id.* at 35. While our appellate courts have not addressed the applicability of *nullum tempus* to a statute of repose, Fiore highlights that "courts of last resort from other jurisdictions have declined to hold that the *nullum tempus* doctrine defeats a statute of repose." *Id.* at 36 (citing *City of Rochester v. Marcel A. Payeur, Inc.*, 152 A.3d 878 (N.H. 2016); *Shasta View Irrigation Dist. v. Amoco Chems. Corp.*, 986 P.2d 536 (Or. 1999); *Commonwealth of Va. v. Owens-Corning Fiberglass Corp.*, 385 S.E.2d 865 (Va. 1989)). Fiore further notes that this Court has explained the purpose of the Section 5536 statute of repose is "to protect [architects, engineers, and contractors] from suit long after improvements were completed." *Id.* at 38 (quoting *Noll*, 643 A.2d at 86). Section 5536, as a comprehensive legislative scheme, supersedes the common law doctrine of *nullum tempus*, in Fiore's view, and it would be "fundamentally unfair" to apply *nullum tempus* when the legislature has already decided that public policy is best served by eliminating the liability of construction industry professionals after 12 years. *Id.* at 40 (quoting *Sternlicht v. Sternlicht*, 876 A.2d 904, 912 (Pa. 2005)).

In the alternative, if we conclude *nullum tempus* can apply to Section 5536, Fiore argues that County did not meet the two-part test for *nullum tempus* because Appellees were not legally obligated to enter into contracts for the jail's construction, and the County was not legally bound to construct a jail. *Id.* at 15. Fiore contends that, although *nullum tempus* has never been applied in this context, political subdivisions, such as County,

may invoke *nullum tempus* in limited circumstances, as set forth in *City of Philadelphia v. Holmes Electric Power Co.*, 6 A.2d 884 (Pa. 1939):

> [U]nless otherwise provided, statutes of limitations cannot be pleaded against such political subdivisions when they are seeking to enforce strictly public rights, that is, when the cause of action accrues to them in their governmental capacity and the suit is brought to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant.

*Id.* at 15-16 (quoting *Holmes*, 6 A.2d at 887).

Fiore asserts County cannot meet the first criterion in *Holmes* because it had no legal obligation to build a jail. Initially, Fiore points out the trial court noted there are at least four Pennsylvania counties that do not have county jails. *Id.* at 30. Agreeing with the Commonwealth Court, Fiore argues the statutory and constitutional authority County cites merely authorizes counties to construct jails but does not impose any obligation to do so. *Id.* at 30-32. In further support of the Commonwealth Court, Fiore points out that Section 390.715 of the Prison Facilities Improvement Act, 61 P.S. § 390.715, "authorizes counties to lease space in another county's prison facility or in a regional prison facility for the purpose of housing its own inmates and to enter into contracts for the purpose of housing inmates in another county or in a multicounty regional prison facility." *Id.* at 32-33. Section 390.715, in Fiore's view, clearly means "counties have no inherent obligation to erect their own jails." *Id.* at 34.

Additionally, Fiore argues County cannot meet the second criterion in *Holmes* because "the suit brought by Clearfield County against Kimball, Fiore and Showalter is premised upon an agreement or agreements voluntarily entered into by each of the Defendants." *Id.* at 17 (emphasis omitted). Fiore notes that the *Holmes* Court declined to apply *nullum tempus* to a statute of limitations because the political subdivision was not bringing a claim that accrued by operation of law, rather its claim was based on a

contract the defendant voluntarily entered. *Id.* at 18. The takeaway from *Holmes*, in Fiore's view, is "for the government to invoke the doctrine of *nullum tempus*, its claims must result from duties imposed by law on both the government and the defendant." *Id.* at 19. Applying *Holmes* here, Fiore maintains County's lawsuit is based on voluntary contractual relationships between County and Appellees, which forecloses County's ability to invoke *nullum tempus* to defeat the statute of repose. *Id.* at 20, 29. Accordingly, because County has not met the criteria of the *Holmes* test, Fiore maintains we should affirm the Commonwealth Court.

Likewise, Appellee Transystems primarily advances an argument that County did not satisfy either of the above criterion in *Holmes*. Transystems Br. at 14-17 (arguing no constitutional or statutory mandate compelled County to construct the jail); 18-20 (asserting no statutory or legal duty obligated Appellees to enter into contracts with County to build a jail). Additionally, Transystems raises policy arguments that we should not apply *nullum tempus* to a statute of repose. Transystems first notes that *nullum tempus* is "an offshoot of sovereign immunity," and the "erosion of sovereign immunity" has also eroded the justification for *nullum tempus*. *Id.* at 20-21. Second, Transystems argues we should not extend *nullum tempus* to apply to statutes of repose because the purposes of statutes of repose are distinct from those of statutes of limitations. *Id.* at 21. Transystems stresses that statutes of repose bar lawsuits before a cause of action arises, regardless of whether the plaintiff had been injured or had discovered an injury. *Id.* This contrasts with a statute of limitations, which does not begin to run until the injury occurs or it is discovered. *Id.* at 21-22. Because statutes of repose bar a cause of action after the expiration of a specified time, Transystems argues the legislative intent is to provide a "constitutionally protected substantive right of repose" to potential defendants after the repose period has expired. *Id.* at 26. Relying on the Mack article, *supra*, Transystems

concludes "statutes of repose should not be nullified by *nullum tempus* because of the choice the legislature has made to protect the enumerated class, in this case architects, engineers, and contractors." *Id.* at 27 (citing Mack, *supra*, at 195). For these reasons, Transystems urges us to decline to extend *nullum tempus* to the Section 5536 statute of repose. *Id.*

Appellee Showalter adopts the arguments provided by Fiore and Transystems. Showalter's Br. at 5. Additionally, Showalter emphasizes that this case illustrates the justifications for the statute of repose as no party has a copy of the final construction contract or any witnesses to testify as to the terms of the final agreement. *Id.*[10]

In response to Appellees' arguments, County contends that if we consider equitable concerns as Fiore argues, we should also consider those in favor of County, namely "[Appellees] breached their contract with Clearfield County, received payment for work that they did not do, and because of their breach, the taxpayers of Clearfield County had to pay more than $3.8 million to complete the jail renovation." County's Reply Br. at

---

[10] Amici American Council of Engineering Companies of Pennsylvania (ACEC/PA), et al., highlight that the Section 5536 statute of repose was a legislative decision unambiguously abolishing liability after 12 years, which is a jurisdictional bar that the common law doctrine of *nullum tempus* cannot toll. Amici ACEC/PA's Br. at 14-20, 34-38. Amici also agree that County cannot invoke *nullum tempus* when it did not have a legal obligation to construct the jail, and when it voluntarily contracted with Appellees. *Id.* at 28.

Amicus Keystone Contractors Association (KCA) also argue that we should not extend *nullum tempus* to statutes of repose because imposing liability on construction professionals beyond 12 years is against public policy, and County should not be permitted to bring an action that the statute of repose has extinguished. Amicus KCA's Br. at 12-17.

Amici the Master Builders' Association of Western Pennsylvania, Inc. (MBA) and Constructors Association of Western Pennsylvania (CAWP) similarly argue that a court has never applied *nullum tempus* to defeat a statute of repose. Amici MBA & CAWP's Br. at 8-10. Amici contend it should not be applied in this case because Section 5536 aims to protect construction industry defendants, and applying *nullum tempus* to circumvent Section 5536 would harm the construction industry. *Id.* at 21-22.

1.  Additionally, County asserts, for the first time, *nullum tempus* has applied to the statute of repose for more than 43 years in cases in which the Commonwealth is the plaintiff.  *Id.* (citing *Gen. State Auth. v. Lawrie & Green & John McShain, Inc.*, 439 A.2d 228, 229 (Pa. Cmwlth. 1982) (characterizing the 12-year period in Section 5536 as a "period of limitation" and concluding the General State Authority's claims were not barred based on *nullum tempus*)).  Further, County repeats its position that it was constitutionally and statutorily mandated to provide pretrial detainees with the right to bail.  *Id.* at 3.  The means by which counties meet that mandate is delegated to the county commissioners, and in County's view, "[i]t is not the job of the General Assembly to delve into the minutia of county governance and declare when counties should construct jails."  *Id.*  Accordingly, County maintains that the policy underlying *nullum tempus*—to vindicate public rights and protect the public fisc—is best served by applying *nullum tempus* here.

**B.  DISCUSSION**

Although the trial court's disposition was based on its conclusion that the doctrine of *nullum tempus* was inapplicable to Section 5536, the Commonwealth Court bypassed that issue by assuming *arguendo* that *nullum tempus* applied and then deciding County did not meet the second requirement of the *Holmes* test because its construction of the jail was not enforcing a legal obligation.  *Transystems Corp.*, 326 A.3d at 1038-39.  We decline to make the same assumption as the Commonwealth Court because the applicability of *nullum tempus* to the Section 5536 statute of repose is a pure question of law.

As set forth above, Section 5536 provides that a lawsuit filed against a construction industry professional "must be commenced within 12 years after completion of construction."  42 Pa.C.S. § 5536(a).  Section 5536 provides two exceptions to that general rule, one for an injury or wrongful death occurring more than 10 and within 12

years after construction is completed, and a second precluding a defendant in possession or control of the improvement from asserting the subsection (a) time limit as a defense, neither of which is relevant in this case. 42 Pa.C.S. § 5536(b). To the extent we are required to interpret Section 5536, we are guided by the Statutory Construction Act, which directs us to give effect to the legislature's intent and all the statute's provisions. 1 Pa.C.S. § 1921(a). A statute's plain language is the best indicator of the legislature's intent. *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020). To arrive at a statute's plain meaning, we analyze its operative language in context and interpret words and phrases according to their common and approved usage. *Id.* We must give effect to an unambiguous statute, and we cannot ignore a statute's plain meaning to implement its perceived objectives. *Id.* "Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent." *Matter of Private Sale of Prop. by Millcreek Twp. Sch. Dist.*, 185 A.3d 282, 291 (Pa. 2018); *see also* 1 Pa.C.S. § 1921(c) (providing factors to consider when "the words of a statute are not explicit"). Further, "[s]tatutory interpretation is a question of law, as to which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Crosby*, 329 A.3d 1141, 1148-49 (Pa. 2025).

Our Court has stated that "Section 5536 is a statute of repose, rather than a statute of limitation. As a statute of repose, Section 5536 does not merely bar a party's right to a remedy as a statute of limitations does, but it completely abolishes and eliminates the cause of action." *Noll*, 643 A.2d at 84 (citations omitted); *accord Vargo v. Koppers Co., Inc., Eng'g & Constr. Div.*, 715 A.2d 423, 426 n.3 (Pa. 1998) ("42 Pa.C.S. § 5536 clearly has the effect of a statute of repose, and the courts of this Commonwealth have consistently interpreted it as such."); *Misitis v. Steel City Piping Co.*, 272 A.2d 883, 885 (Pa. 1971) (stating the predecessor to Section 5536, the Act of December 22, 1965, P.L.

1183, did not alter the existing statute of limitations, but it "completely eliminates all causes of action arising out of negligence in construction or design which occurred more than twelve years before the accident."). Additionally, "the history of the statute suggests that it was passed through the efforts of the American Institute of Architects, the National Society of Professional Engineers, and the Association of General Contractors of America to protect these professions from suit long after improvements were completed." *Noll*, 643 A.2d at 85-86 (citing *Luzadder v. Despatch Oven Co.,* 834 F.2d 355, 359 (3d Cir. 1987), *cert. denied sub nom.*, *Honeywell, Inc. v. Luzadder,* 485 U.S. 1035, (1988); *Springman v. Wire Mach. Corp. of Am.,* 666 F.Supp. 66, 69 (M.D. Pa. 1987); *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 Am.U.L.Rev. 579, 587 (1981); *Limitation of Action Statutes for Architects and Builders– Blueprints for Non-Action,* 18 Cath.U.L.Rev. 361, 365 (1969)). Thus, our Court has construed Section 5536 as a statute of repose, and all parties in this appeal accept that Section 5536 is a statute of repose.

In addition to the *Noll* Court's observation that Section 5536, as a statute of repose, abolishes and eliminates the cause of action, this Court has relied on the United States Supreme Court's exposition of the distinctions between statutes of limitations and statutes of repose:

> Statutes of limitations and statutes of repose both are mechanisms used to limit the temporal extent or duration of liability for tortious acts. Both types of statute can operate to bar a plaintiff's suit, and in each instance time is the controlling factor. There is considerable common ground in the policies underlying the two types of statute. But the time periods specified are measured from different points, and the statutes seek to attain different purposes and objectives. . . .
>
> In the ordinary course, a statute of limitations creates "a time limit for suing in a civil case, based on the date when the claim accrued." BLACK'S LAW DICTIONARY 1546 (9th ed. 2009) (BLACK'S); *see also Heimeshoff v. Hartford Life &*

*Accident Ins. Co.*, 571 U.S. 99, 105 (2013) ("As a general matter, a statute of limitations begins to run when the cause of action "'accrues'"—that is, when 'the plaintiff can file suit and obtain relief'" (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)). Measured by this standard, a claim accrues in a personal-injury or property-damage action "when the injury occurred or was discovered." Black's 1546. . . .

A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant. A statute of repose "bar[s] any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury." Black's 1546. The statute of repose limit is "not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." 54 C.J.S., Limitations of Actions § 7, p. 24 (2010) (hereinafter C.J.S.). The repose provision is therefore equivalent to "a cutoff," *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991), in essence an "absolute ... bar" on a defendant's temporal liability, C.J.S. § 7, at 24.

Although there is substantial overlap between the policies of the two types of statute, each has a distinct purpose and each is targeted at a different actor. Statutes of limitations require plaintiffs to pursue "diligent prosecution of known claims." Black's 1546. Statutes of limitations "promote justice by preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *R.R. Tels. v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944). Statutes of repose also encourage plaintiffs to bring actions in a timely manner, and for many of the same reasons. But the rationale has a different emphasis. Statutes of repose effect a legislative judgment that a defendant should "be free from liability after the legislatively determined period of time." C.J.S. § 7, at 24; *see also Sch. Bd. of Norfolk v. U.S. Gypsum Co.*, 360 S.E.2d 325, 328 (1987) ("[S]tatutes of repose reflect legislative decisions that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability" (internal quotation marks omitted)). Like a

discharge in bankruptcy, a statute of repose can be said to provide a fresh start or freedom from liability. Indeed, the Double Jeopardy Clause has been described as "a statute of repose" because it in part embodies the idea that at some point a defendant should be able to put past events behind him. *Jones v. Thomas*, 491 U.S. 376, 392 (1989) (Scalia, J., dissenting).

One central distinction between statutes of limitations and statutes of repose underscores their differing purposes. Statutes of limitations, but not statutes of repose, are subject to equitable tolling, a doctrine that "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). Statutes of repose, on the other hand, generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control. *See, e.g.*, *Lampf*, 501 U.S. at 363 ("[A] period of repose [is] inconsistent with tolling"); 4 C. Wright & A. Miller, Federal Practice and Procedure § 1056, p. 240 (3d ed. 2002) ("[A] critical distinction is that a repose period is fixed and its expiration will not be delayed by estoppel or tolling"); RESTATEMENT (SECOND) OF TORTS § 899, Comment g (1977).

Equitable tolling is applicable to statutes of limitations because their main thrust is to encourage the plaintiff to "pursu[e] his rights diligently," and when an "extraordinary circumstance prevents him from bringing a timely action," the restriction imposed by the statute of limitations does not further the statute's purpose. *Lozano*, 572 U.S. at 10. But a statute of repose is a judgment that defendants should "be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason." C.J.S. § 7, at 24. . . .

*CTS Corp. v. Waldburger*, 573 U.S. 1, 7-10 (2014) (as quoted in *Dubose v. Quinlan*, 173 A.3d 634, 643-45 (Pa. 2017)) (parallel citations omitted and citations edited).

The dispute in this case turns on whether County can invoke the doctrine of *nullum tempus* to avoid the Section 5536 statute of repose. *Nullum tempus* is a common law doctrine that "permits a government agency 'to circumvent the applicable statute of limitations.'" *Allegheny Intermediate Unit v. E. Allegheny Sch. Dist.*, 203 A.3d 371, 378

(Pa. Cmwlth. 2019) (quoting *Duquesne Light Co. v. Woodland Hills Sch. Dist.*, 700 A.2d 1038, 1051 (Pa. Cmwlth. 1997)). *Nullum tempus* "appears to have had its roots in the prerogative of the Crown." *J.W. Bishop II*, 439 A.2d at 103 (citing *Guar. Tr. Co. of N.Y. v. United States*, 304 U.S. 126 (1938); 1 WILLIAM BLACKSTONE, Commentaries *247-48). The doctrine of *nullum tempus* is distinct from sovereign immunity because when the Commonwealth invokes *nullum tempus*, "it is seeking as a plaintiff to vindicate public rights and protect public property," whereas in asserting the defense of sovereign immunity, the Commonwealth as a defendant is seeking to preclude an injured party's recovery for the state's alleged wrongs. *Id.* at 104. Further, "since its adoption in this country, the rationale for the doctrine of *nullum tempus* has been 'the great public policy of preserving public rights, revenues and property from injury and loss[, by the negligence of public officers].'" *Id.* (quoting *United States v. Hoar*, 26 F. Cas. 329, 330 (D. Mass. 1821) (Story, J.) (italics and bracketed language added to complete quoted sentence) ("The true reason, indeed, why the law has determined, that there can be no negligence or laches imputed to the crown, and, therefore, no delay should bar its right, though sometimes asserted to be, because the king is always busied for the public good, and, therefore, has not leisure to assert his right within the times limited to subjects")). The doctrine of *nullum tempus* "though . . . sometimes called a prerogative right, it is in fact nothing more than a reservation, or exception, introduced for the public benefit, and equally applicable to all governments." *Hoar*, 26 F. Cas. at 330. Accordingly, *nullum tempus* operates as an exception to statutes of limitations for the Commonwealth that is justified by the public policy of preserving public rights and funds from public officials' delay in timely filing suit, at least in part because those officials are preoccupied with other affairs of the state.

In Pennsylvania, *nullum tempus* originally provided immunity from statutes of limitations to the sovereign alone, *i.e.*, the Commonwealth and its agencies, and its protection did not extend to political subdivisions, such as counties or municipalities. *Evans v. Erie Cnty.*, 66 Pa. 222, 228 (Pa. 1870). However, in *Holmes*, this Court recognized that the protection of *nullum tempus* from statutes of limitations extends to political subdivisions "when they are seeking to enforce strictly public rights, that is, when the cause of action accrues to them in their governmental capacity and the suit is brought to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant." *Holmes*, 6 A.2d at 887.

Here, County argues for the application of *Holmes* to the Section 5536 statute of repose. County's position would require us to extend the protection of *nullum tempus* from statutes of limitation to the statute of repose, but our Court has yet to address whether *nullum tempus* can preclude the application of the statute of repose to the Commonwealth or its political subdivisions. Further, the trial court here and a court of common pleas in *Manheim* concluded that *nullum tempus* does not apply to the statute of repose, and the federal district court in *Tremco* predicted that our Court would not extend the doctrine to the statute of repose.

Before discussing those cases, however, we address the Commonwealth Court's decision in *General State Authority v. Lawrie & Green & John McShain, Inc.*, 439 A.2d 228 (Pa. Cmwlth. 1982), which County cited in its reply brief. The *Lawrie* Court held that the doctrine of *nullum tempus* precluded "the 12-year period of limitation" in Section 5536 from barring the General State Authority's (GSA) claims for defective design and construction. *Lawrie*, 439 A.2d at 229. In *Lawrie*, the defendants raised as defenses to the GSA's claims the six-year statute of limitations for contract damages in 42 Pa.C.S.

§ 5527[11] and the 12-year time period in Section 5536 and moved for summary judgment. *Id.* The defendants also argued that *nullum tempus* did not apply because it had been abrogated by the Commonwealth Court in *Department of Transportation v. J.W. Bishop & Co., Inc.*, 423 A.2d 773 (Pa. Cmwlth. 1980) (*J.W. Bishop I*). *Id.* The Commonwealth Court rejected the defendant's reliance on its decision in *J.W. Bishop I* because after argument and before the preparation of its opinion, this Court reversed *J.W. Bishop I* and reaffirmed that *nullum tempus* precludes a statute of limitations from running against the Commonwealth unless the statute expressly provides it does. *Id.* at 229-30; *see also J.W. Bishop II*, 439 A.2d at 101. Accordingly, the Commonwealth Court held "the GSA's claims are not barred by the statutes of limitations" and dismissed the motions for summary judgment. *Id.* at 230. Because the Commonwealth Court did not analyze Section 5536 as a statute of repose, its decision is of limited value here. Its oversight may be explained by the fact that this Court did not definitively hold Section 5536 was a statute of repose until we issued the *Noll* opinion in 1994. Nonetheless, this Court's 1971 decision in *Misitis* found that the predecessor to Section 5536, the Act of December 22, 1965, had the effect of a statute of repose, and the historical note following Section 5536 states that it is "substantially a reenactment" of that act. *See* 42 Pa.C.S. § 5536; *Misitis*, 272 A.2d at 885. As *Lawrie* is an intermediate court decision that is not binding on this Court, and it is an outlier that contains no reasoning to support its treatment of Section 5536 as a statute of limitations, we are not persuaded by its holding that *nullum tempus* applies to Section 5536.

---

[11] 42 Pa.C.S. § 5527(b) contains a catchall six-year statute of limitations for "[a]ny civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) . . . ." 42 Pa.C.S. § 5527(b).

In contrast to *Lawrie*, two more recent cases have concluded that under Pennsylvania law a government plaintiff could not utilize *nullum tempus* to circumvent the Section 5536 statute of repose. First, in *Manheim*, the Lancaster County Court of Common Pleas sustained preliminary objections based on its conclusion that the Section 5536 statute of repose barred Manheim Central School District's 2016 lawsuit for breach of a 1991 construction contract and for professional negligence. *Manheim*, 2017 WL 10440562, at *3. The *Manheim* Court rejected the plaintiff school district's argument that *nullum tempus* tolled the statute of repose because the plaintiff did not cite any authority for the proposition that *nullum tempus* applies to statutes of repose in the same way it applies to statutes of limitations, and Pennsylvania jurisprudence has consistently applied *nullum tempus* to statutes of limitations alone. *Id.* at *4. Accordingly, the court concluded "[a]bsent authority to support its position, [the] [p]laintiff has no basis to argue that *nullum tempus* tolls the statute of repose." *Id.*

Similarly, in *Tremco*, the United States District Court for the Western District of Pennsylvania granted, in part, Tremco's motion to dismiss Belle Vernon Area School District's complaint based on the Section 5536 statute of repose. *Tremco*, 2023 WL 5337286, at *1. In that case, the school district filed a complaint in 2023 alleging breach of contract and breach of warranty claims against Tremco for its design and installation of a bus canopy at a district building in 2005 that later collapsed in 2020. Tremco raised the Section 5536 statute of repose as a complete bar to the district's claims. *Id.* at *2. The district responded that the statute of repose was not applicable under the doctrine of *nullum tempus*. *Id.* at *4. The *Tremco* Court noted that it could not find any Pennsylvania appellate court decisions addressing whether *nullum tempus* can overcome a statute of repose defense, but the *Manheim* decision concluded that it could not. *Id.* The district court continued that other jurisdictions have reached divergent results. *Id.* at *5. It then

quoted the Mack law journal article's explanation that the differing policies underlying statutes of repose and statutes of limitations justifies applying *nullum tempus* to statutes of limitations but not extending it to statutes of repose. *Id.* (quoting Mack, *supra*). Accordingly, the district court predicted that our Court would not apply *nullum tempus* to the Section 5536 statute of repose "[b]ecause no clear authority from a Pennsylvania court authorizes the use of *nullum tempus* to defeat a statute of repose defense under § 5536, and the only case to explicitly address the issue rejects it[,]" and the court granted Tremco's motion to dismiss because the statute of repose barred the school district's breach of contract claim.

With this background in mind, we decline County's request to extend the doctrine of *nullum tempus* to the Section 5536 statute of repose and its invocation of the *Holmes* requirements. Instead, we conclude that the doctrine of *nullum tempus* does not permit County to avoid the Section 5536 statute of repose. Here, Section 5536, as a statute of repose, abolishes and eliminates causes of action against construction industry professionals 12 years after the construction project is completed and precludes the revival of those causes of action. *See CTS Corp.*, 573 U.S. at 8; *accord Graver v. Foster Wheeler Corp.*, 96 A.3d 383, 387 (Pa. Super. 2014) ("[S]tatutes of repose operate as substantive law by extinguishing a cause of action outright and precluding its revival."). As such, Section 5536 divests a court of subject matter jurisdiction over claims filed beyond its 12-year limit. *See Gilbert*, 131 A.3d at 15. Additionally, the Section 5536 statute of repose is not subject to the equitable defenses of estoppel or tolling. *CTS Corp.*, 573 U.S. at 9 (explaining statutes of repose "generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control."). Section 5536 is a legislative judgment that public policy is best served by eliminating the indeterminate potential liability of construction industry professionals after a fixed 12-year period. *Id.*

In invoking the common law doctrine of *nullum tempus* to circumvent the Section 5536 statute of repose, County is attempting to toll Section 5536 based on the doctrine's equitable concerns that public rights, revenues, and property should not be lost due to County's failure to timely discover its right to a cause of action and to timely file a lawsuit. However, Section 5536 is not subject to tolling because it is a statute of repose. Section 5536's purpose is to protect the construction industry from the economic consequences of indeterminate liability by providing a definitive 12-year cutoff to liability. *Noll*, 643 A.2d at 85-86 ("[T]he history of [Section 5536] suggests that it was passed through the efforts of the American Institute of Architects, the National Society of Professional Engineers, and the Association of General Contractors of America to protect these professions from suit long after improvements were completed."). The enactment of Section 5536 was a legislative decision that the public interest is best served by eliminating the liability of construction industry professionals after 12 years, regardless of the reason an injured party was unable to bring suit within 12 years from the completion of construction. Allowing County to invoke *nullum tempus* to avoid the repose period would undermine that legislative judgment because it would reintroduce the threat of indeterminate liability for construction industry professionals. Accordingly, we conclude *nullum tempus* cannot toll or avoid the Section 5536 statute of repose. Further, as *nullum tempus* does not apply to Section 5536, we do not reach the issue of whether County satisfied the criteria in *Holmes*, which apply when a political subdivision invokes *nullum tempus* to avoid a statute of limitations defense.

## IV. CONCLUSION

For these reasons, we conclude County cannot utilize the common law doctrine of *nullum tempus* to circumvent the Section 5536 statute of repose. Accordingly, we affirm

the order of the Commonwealth Court affirming the trial court's order sustaining Appellees' preliminary objections.[12]

Order affirmed. Jurisdiction relinquished.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht, Brobson and McCaffery join the opinion.

---

[12] "It is well settled that this Court may affirm the decision of the immediate lower court on any basis, without regard to the basis on which the court below relied." *Shearer v. Naftzinger*, 747 A.2d 859, 861 (Pa. 2000).